The STATE of Ohio, Appellant,

v.

HOUSEHOLDER, Appellee.

[Cite as *State v. Householder*, 181 Ohio App.3d 269, 2009-Ohio-826.]

Court of Appeals of Ohio,
Fifth District, Licking County.

No. 2008–CA–00062.

Decided Feb. 23, 2009.

Douglas E. Sassen, Newark Director of Law, and Tricia M. Moore, Assistant Director of Law, for appellant.

J. Matthew Dawson, for appellee.

GWIN, Judge.

{¶ 1} Plaintiff-appellant, the state of Ohio, appeals the April 30, 2008 judgment entry of the Licking County Municipal Court granting defendant-appellee Tyler Householder's supplemental motion to suppress evidence.

## STATEMENT OF THE FACTS AND CASE [1]

{¶ 2} On July 29, 2007, patrol officer Ray Lewis of the Newark Police Department arrested the appellee for operating a motor vehicle while under the influence of alcohol.[2]

{¶ 3} A motion to suppress was filed by appellee on August 14, 2007. After an evidentiary hearing on November 29, 2007, the trial court denied the appellee's motion, finding that the breath test and maintenance of the breath-testing machine were done in substantial compliance with the regulations of the Ohio Department of Health. On February 29, 2008, the appellee filed a motion to reconsider the motion to suppress and was granted a hearing on the issue concerning invalid samples.

{¶ 4} Patrol officer Lewis is a ten-year veteran of the department and is certified as a senior operator for the BAC Datamaster. On the night in question, the appellee was taken to the Newark Police Department. After being read the BMV 2255 Form, he submitted to a breath test conducted on the BAC Datamaster. Patrol officer Lewis observed appellee for a 20–minute period prior to conducting the breath test at 3:58 a.m. During the administration of that test, patrol officer Lewis testified that he explained "as best as possible in both scientific and layman's terms" how to complete the test. He testified that, in his

---

1. A statement of the facts underlying appellee's stop is unnecessary to our disposition of this appeal. Any facts needed to clarify the issues addressed in appellant's assignment of error shall be contained therein.

2. We note that appellee was charged with both operating a vehicle under the influence of alcohol ("OVI"), (R.C. 4511.19(A)(1)(a)), and an OVI per se (R.C. 4511.19(A)(1)(h)).

ten years of experience, it is not uncommon for someone taking the test for the first time not to understand how to correctly blow into the machine. He explained to the appellee that if the machine starts beeping, then he, the appellee, is not giving an adequate sample. In other words, he is not blowing into the machine correctly.

{¶ 5} During the first test, the Datamaster alerted patrol officer Lewis through an audible tone that appellee was not blowing sufficiently into the machine. As a result, the machine's printout read "invalid sample." Patrol officer Lewis testified, "In this case with an invalid sample it just means that the subject did not provide an adequate amount of basically what we are hunting for, deep lung air to complete the test." At the hearing on the appellee's motion to reconsider in April 2008, patrol officer Lewis again stated that the machine "went from a steady tone, to a beep, back to a steady tone," which indicated to him that the reason for the invalid sample was a "discontinued blowing pattern." After the first invalid sample was received, patrol officer Lewis reset the machine, reentered the appellee's information, observed that the machine verified at .000, and performed a second test at 4:01 a.m. The printout of the second test displayed a blank test of .000, which indicated to the officer that the machine was in proper working order. The sample obtained from the appellee produced a result of .196.

{¶ 6} At the second hearing held April 22, 2008, Dean Ward, the bureau chief for the Bureau of Alcohol and Drug Testing with the Ohio Department of Health, testified concerning a memorandum issued by the Department of Health on December 14, 1998. He testified that according to this memorandum, the Department of Health took the position that any invalid sample indication on a BAC Verifier or BAC Datamaster should be handled by initiating a new 20–minute observation period. Although this position was never adopted as a regulation by the department, Mr. Ward testified that the memorandum issued on December 14, 1998, still essentially embodies the Department of Health's position with respect to invalid sample indications.

{¶ 7} However, in spite of this memorandum, Mr. Ward further testified that the sample obtained by patrol officer Lewis appeared to be a valid sample. He testified that "based on the test itself with the proper air blanks and the internal standard verified, this would be a valid test. * * * There is no indication here that the Datamaster saw anything wrong with the sample."

{¶ 8} On April 30, 2008, the trial court issued a judgment entry granting appellee's supplemental motion to suppress. The court ruled that "the State has not demonstrated compliance with the Ohio Department of Health's regulations concerning the admissibility of the breath test. In particular, the ambiguous evidence regarding the reason for the invalid sample renders the State's compliance with the operational checklist to be suspect in light of the Department of

Health's memorandum from December 1998. Because the reason for the invalid sample could not be determined, the Court finds that the officer was required to begin a new twenty-minute observation. Because this was not done, the State has not met its burden of establishing compliance with the Department of Health's regulations, which requires compliance with the machine's operational checklist."

{¶ 9} Appellant now appeals, assigning as error:

{¶ 10} "I. The trial court erred in granting the defendant's motion to suppress the results of a breath test conducted on July 29, 2007."

I

{¶ 11} Appellant argues that the trial court erred when it suppressed the results of appellee's second BAC DataMaster test on the ground that the test was rendered invalid because the officer failed to conduct a second 20–minute observation of appellee after receiving an "invalid sample" on the first test attempt. We agree.

{¶ 12} R.C. 4511.19(D) requires that the analysis of bodily substances be conducted in accordance with methods approved by the Ohio Director of Health ("ODH"), as prescribed in Ohio Administrative Code regulations. The Ohio Supreme Court has held that absent a showing of prejudice by the defendant, rigid compliance with ODH regulations is not required as such compliance is not always humanly or realistically possible. *State v. Plummer* (1986), 22 Ohio St.3d 292, 294, 22 OBR 461, 490 N.E.2d 902; *State v. Morton* (May 10, 1999), 12th Dist. No. CA98–10–131, 1999 WL 296700. Rather, if the state shows substantial compliance with the regulations, absent prejudice to the defendant, alcohol-test results can be admitted in a prosecution under 4511.19. Id. In determining whether the state substantially complied with ODH regulations, the trial court is in the best position to resolve questions of fact and evaluate the credibility of the witnesses. *State v. Williams* (1992), 82 Ohio App.3d 39, 610 N.E.2d 1188.

{¶ 13} The trial court ruled in the case below that breath-test results could not be admitted at trial unless the state can show that the test was administered in compliance with the methods approved by the ODH. The court held in this case that the test was not administered in compliance with the directives of the ODH. The trial court relied upon a 1998 Memorandum issued by the Ohio Department of Health in ruling that the state has failed to demonstrate compliance. The memorandum instructed that a second 20–minute observation period should be used following every "invalid sample" result. Specifically, the memo stated:

{¶ 14} "Effective immediately an 'invalid sample' indication on the BAC Verifier or BAC Datamaster is to be handled by initiating a new 20 minute

observation period. The reason for this change is due to the fact that 'invalid sample' may be caused by different things. The operator will no longer have to decide exactly what may have caused the 'invalid sample', the remedy will always be a new observation period."

{¶ 15} In *State v. Bosier* (July 24, 2000), 12th Dist. No. CA99–11–036, 2000 WL 1050976, at *2, Craig Sutheimer, the chief of the Bureau of Alcohol and Drug testing, testified that there was "no rule in place which requires officers to wait an additional twenty minutes before conducting a second test" after the first test yielded invalid results. He stated, "[T]he reason for the memo was to avoid the numerous requests for testimony in court about the possibility of an 'INVALID SAMPLE' being the result of mouth alcohol." Id.

{¶ 16} In *State v. Steele* (1977), 52 Ohio St.2d 187, 6 O.O.3d 418, 370 N.E.2d 740, the Ohio Supreme Court explained the reason for the 20–minute observational period before testing. The court explained that the observational period is used to eliminate the possibility that the test result is a product of anything other than the suspect's deep-lung breath. Id. at 190, 6 O.O.3d 418, 370 N.E.2d 740. Further, since the "accuracy of the test results can be adversely affected if the suspect either ingests material orally, like food or drink, or regurgitates material internally, by belching or vomiting, the suspect must be observed" for 20 minutes to verify that no external or internal material causes a false reading. *State v. Douglas*, 1st Dist. No. C–030897, 2004-Ohio-5726, 2004 WL 2421847, at ¶ 9, citing *Steele*, 52 Ohio St.2d at 190, 6 O.O.3d 418, 370 N.E.2d 740; *State v. Camden*, 7th Dist. No. 04 MO 12, 2005-Ohio-2718, 2005 WL 1303207, at ¶ 15. In *Steele*, the court reasoned that once the trooper demonstrated it was highly improbable that the subject ingested any item during the 20–minute period, it was up to the defendant to "overcome that inference" with proof that she had ingested some substance. Moreover, ingestion has to be more than just "hypothetically possible." *Steele* at 192, 6 O.O.3d 418, 370 N.E.2d 740; accord *State v. Faykosh*, 6th Dist. No. L–01–1244, 2002-Ohio-6241, 2002 WL 31528740; *State v. Embry*, 12th Dist. No. CA2003–11–110, 2004-Ohio-6324, 2004 WL 2698417, at ¶ 25; *State v. Rennick*, 7th Dist. No. 02 BA 19, 2003-Ohio-2560, 2003 WL 21134848 at ¶ 25; *State v. Siegel* (2000), 138 Ohio App.3d 562, 568–569, 741 N.E.2d 938.

{¶ 17} Appellee introduced nothing to suggest that he did, in fact, ingest some material during the 20–minute period. A mere assertion that ingestion during the 20–minute period was hypothetically possible, without more, did not render the test results inadmissible. *State v. Raleigh*, Licking App. No. 2007–CA–31, 2007-Ohio-5515, 2007 WL 2994237, at ¶ 51.

{¶ 18} "Although its language is unambiguous, the [1998 Memorandum issued by the Ohio Department of Health] does not represent an authoritative

rule we are bound to enforce. Unlike the [Ohio Administrative Code], 'a directive from a memorandum does not rise to the level of an administrative regulation, and is not enforceable.' *State v. Gigliotti* (Dec. 22, 2000), 6th Dist. No. E–99–081[, 2000 WL 1867265, *6]; see, also, *State v. Reiger*, 5th Dist. No. 02CA30, 2002-Ohio-6673[, 2002 WL 31730986] at ¶13; *State v. Hayes*, 9th Dist. No. 04CA0105–M, 2005-Ohio-6607[, 2005 WL 3416189] at ¶16; *State v. Massie*, 2d Dist. No. 2007 CA 24, 2008-Ohio-1312[, 2008 WL 754804], at ¶20. We do not deny that the trooper had the option of conducting a second test. However, appellant does not point to, nor are we aware of, any code section that would require the trooper to do so under circumstances such as this." *State v. Smith*, Portage App. Nos. 2006–P–0101 and 2006–P–0102, 2008-Ohio-3251, 2008 WL 2586664, at ¶22.

{¶19} In the case at bar, patrol officer Lewis testified that after explaining the test to the appellee, he, patrol officer Lewis, detected a discontinued blowing pattern as the tone on the machine went from a steady tone to a beep and then back to a steady tone. He went on to further testify that had mouth alcohol been present, per his training, the machine would not "zero out," meaning produce a blank test of .000, after resetting the machine, and that would have prevented him from proceeding with the second test. Upon cross-examination, patrol officer Lewis testified that while there are other things that can cause an invalid sample, the fact that the machine was "beeping" while the appellee was attempting to provide a sample, paired with the machine resetting without incident and providing a valid sample on the second test, confirmed his opinion that the breathing pattern was the reason for the "invalid sample."

{¶20} Dean Ward, the Bureau Chief for the Bureau of Alcohol and Drug Testing with the Ohio Department of Health, testified that if evidence of mouth alcohol were present, the second test would have been invalidated as well. Ward testified:

{¶21} "Correct and if there was mouth alcohol involved in a test right after a second test it would catch it the second time as well. So what I am saying is if the first test is invalidated by mouth alcohol, if you will or the improper blowing pattern or excessive moisture in the sample cell, the instrument completes its cycle, cleanses itself through the air blanks, so the first invalid sample will be printed, the instrument with air blanks which cleanses the sample cell and it goes back to zero, then you have to run * * * press the run button for the second test then it goes through its diagnostics, its internal standards, its air blank and then it will ask for the test once again. And if mouth alcohol is involved in the second test then it would also invalidate the test for mouth alcohol. So in this particular case I don't see an indication where the air blanks are off. They are all zeros so it is if the instrument was operating properly as well." Ward further testified

that the 1998 memorandum "went out as a training recommendation and not as any kind of a regulation by us. It wouldn't stand I don't think to the muster of that without being signed anyway."

{¶ 22} In the case at bar, "though there may not have been strict compliance with the memorandum * * *, we find there was strict compliance with the regulations." *State v. Reiger*, 5th Dist. No. 02CA30, 2002-Ohio-6673, 2002 WL 31730986, at ¶ 13. By so finding, "we note our decision is in accord with our colleagues from the Twelfth District in *State v. Bosier* (Jul. 24, 2000), Clinton App. No. CA99–11–036, unreported[, 2000 WL 1050976]; the Fourth District in *State v. Matlack* (Nov. 2, 1995), Athens County App. No. 95CA1658, unreported (1995 WL 646355); the Sixth District in *State v. Gigliotti* (Dec. 22, 2000), Erie County App. No. E–99–081, unreported (2000 WL 1867265); and the Eighth District in *City of Rocky River v. Papandreas* (Mar. 23, 2000), 2000 WL 301080. As was the case in *Bosier*, the evidence in the case sub judice established the cause of the invalid sample was the appellee's failure to sufficiently blow into the machine. In both cases, the invalid sample was not believed to have been the result of mouth alcohol." *Reiger*, 2002-Ohio-6673, 2002 WL 31730986, at ¶ 14.

{¶ 23} Appellant's assignment of error is sustained.

{¶ 24} The judgment of the Licking County Municipal Court is reversed, and this case is remanded for further proceedings in accordance with our opinion and the law.

Judgment reversed
and cause remanded.

FARMER, P.J., and WISE, J., concur.