[Cite as *State v. Lominack*, 2013-Ohio-2678.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2012CA00213 |
| EDWARD F. LOMINACK III | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING: Criminal appeal from the the Canton
Municipal Court, Case No. 2012 TRC 5990

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: June 25, 2013

APPEARANCES:

For Plaintiff-Appellee                            lominack
For Defendant-Appellant

TYRONE D. HAURITZ
ANTHONY FLEX                                     DOMINIC VANNUCCI
218 Cleveland Avenue S.W.                        22649 Lorain Road
7th Floor                                        Fairview Park, OH  44126
Canton, OH  44701

*Gwin, P.J.*

{¶1} Defendant-appellant Edward F. Lominack, III ["Lominack"] appeals his convictions and sentences from the Canton Municipal Court on one count of driving while under the influence of alcohol or drugs ["OVI"] and one count of driving in marked lanes. Plaintiff-appellee is the State of Ohio.

*Facts and Procedural History*

{¶2} On September 9, 2012 around 12:15 a.m. Trooper Jason Halstead of the Ohio State Highway Patrol was traveling south on I-77 South. Trooper Halstead noticed a dark gray Nissan Maxima that was moving back and forth within its lane of travel. Trooper Halstead proceeded to follow the vehicle. After observing the Nissan drive on top of and over the white lane markings Trooper Halstead activated his cruiser's overhead lights. At this time, the Nissan was already in the process of exiting the interstate at the Tuscarawas Street exit. As shown on the cruiser's digital camera, the Nissan drove over the fog line bordering the left-hand lane, drove through a gore, which was marked with white diagonal lines, then, without signaling, abruptly changed path across three lanes to the right-hand side, before stopping on the right-hand berm.

{¶3} Upon contact, the trooper observed that Lominack's eyes were a little bit glossy. The trooper further smelled a slight odor of alcohol. As the conversation between the two continued, Lominack informed Trooper Halstead that he had been at the Vineyard Bistro in Jackson Township and was attempting to return to his home in Westlake. When asked if he knew where he was, Lominack responded that he was headed back up I-77, North. Trooper Halstead informed Lominack that he was headed in the wrong direction.

{¶4} Trooper Halstead asked Lominack to perform three field sobriety tests. Lominack performed the Horizontal Gaze Nystagmus Test ["HGN"], the One-leg Stand ["OLS"] and the Walk and Turn test [WAT"]. In addition, Lominack agreed to perform a portable breath test ["PBT"]. The PBT test result registered a .078. Trooper Halstead testified on each of the three FST's Lominack displayed indicators that he was under the influence of alcohol. Accordingly, at the conclusion of the FST's and the PBT Trooper Halstead placed Lominack under arrest for OVI.

{¶5} Lominack was transported to the Ohio State Highway Patrol Post in Canton. While there, he was read the BMV 2255 and was offered a Breathalyzer test. Lominack agreed to take the test. The test result showed that Lominack's blood alcohol content ["BAC"] was .085.

{¶6} On September 9, 2012, Lominack was cited for OVI "under the influence" in violation of R.C. 4511.19(A)(1)(d); OVI "prohibited level" in violation of R.C. 4511.19(A)(1)(a); and Driving in Marked Lanes in violation of R.C. 4511.33.

{¶7} On October 5, 2012, Lominack filed a Motion to Dismiss, Suppress, and in Limine. A hearing on this motion was set for October 30, 2012. On October 12, 2012, Lominack filed a motion to continue the jury trial. The motion was denied on October 15, 2012.

{¶8} On October 19, 2012, Lominack filed a Motion to Allow the Deposition of a witness for trial. A hearing was begun on Lominack's motions on October 30, 2012.

{¶9} At the hearing on October 30, 2012, Trooper Halstead testified about the probable cause for the stop and arrest. The remainder of the hearing was continued until November 8, 2012, prior to the commencement of the jury trial.

{¶10} On November 2, 2012, Lominack filed a supplement to his motion to suppress. The state filed an objection opposing the supplementation.

{¶11} On November 8, 2012, the court denied the request to supplement the motion to suppress. The case proceeded to jury trial on November 8, 2012, and Lominack was found "guilty" of OVI per se in violation of 4511.19(A)(1)(d) and "not guilty" of OVI driving under the influence in violation of R.C. 4511,19(A)(1)(a) by the jury. The trial court found Lominack guilty of Marked Lanes in violation of R.C. 4511.33.

{¶12} The trial court sentenced Lominack on the OVI conviction to 180 days in the Stark County Jail, all but three days suspended upon conditions, a fine of $650.00 and court costs. Lominack's driver's license was suspended for 180 days and 6 points were assessed. Lominack was sentenced to pay court costs on the Marked Lanes conviction.

{¶13} By Judgment Entry filed December 3, 2012, the trial court overruled Lominack's motion to suppress.

*Assignments of Error*

{¶14} Lominack raises five assignments of error,

{¶15} "I. THE TRIAL COURT ERRED IN OVERRULING DEFENDANT-APPELLANT'S MOTION TO SUPPRESS.

{¶16} "II. THE TRIAL COURT ERRED IN FINDING APPELLANT GUILTY OF A VIOLATION OF MARKED LANES, O.R.C. §4511.33.

{¶17} "III. THE TRIAL COURT ERRED IN REFUSING TO PERMIT APPELLANT TO PRESENT EXPERT TESTIMONY AT TRIAL.

**{¶18}** "IV. THE TRIAL COURT ERRED IN REFUSING TO PERMIT APPELLANT'S COUNSEL TO CHALLENGE THE CREDIBILITY OF FIELD SOBRIETY TESTING RESULTS.

**{¶19}** "V. THE TRIAL COURT ERRED IN REFUSING TO ALLOW APPELLANT TO PROFFER TESTIMONY WHICH WOULD HAVE BEEN RECEIVED FROM APPELLANT'S EXPERT."

I.

**{¶20}** In his first assignment of error, Lominack argues the trial court erred by overruling his motion to suppress.

**{¶21}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside,* supra; *Dunlap,* supra; *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist. 1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist.1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. See *Burnside,* supra, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist 1997); See, generally, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002);

*Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review *Ornelas*, supra. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, supra at 698, 116 S.Ct. at 1663.

*1. The traffic stop.*

{¶22} The Ohio Supreme Court has emphasized that probable cause is not required to make a traffic stop; rather the standard is reasonable and articulable suspicion. *State v. Mays,* 119 Ohio St.3d 406, 2008-Ohio-4358, 894 N.E.2d 1204, ¶23. Further, neither the United States Supreme Court nor the Ohio Supreme Court considered the severity of the offense as a factor in determining whether the law enforcement official had a reasonable, articulable suspicion to stop a motorist. See*, City of Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12, 665 N.E.2d 1091(1996); *Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89(1996). If an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid. *Mays at* ¶8.

{¶23} In *Mays,* the defendant argued that his actions in the case – twice driving across the white edge line – were not enough to constitute a violation of the driving within marked lanes statute, R.C. 4511.33. Id. at ¶15. The appellant further argued that the stop was unjustified because there was no reason to suspect that he had failed to first ascertain that leaving the lane could be done safely or that he had not stayed within

his lane "as nearly as [was] practicable," within the meaning of R.C. 4511.33(A)(1). The Supreme Court found,

> Appellant's argument is not persuasive. R.C. 4511.33 requires a driver to drive a vehicle entirely within a single lane of traffic. When an officer observes a vehicle drifting back-and-forth across an edge line, the officer has a reasonable and articulable suspicion that the driver has violated R.C. 4511.33.

*Mays* at ¶16. Further, the Supreme Court noted,

> The question of whether appellant might have a possible defense to a charge of violating R.C. 4511.33 is irrelevant in our analysis of whether an officer has a reasonable and articulable suspicion to initiate a traffic stop. An officer is not required to determine whether someone who has been observed committing a crime might have a legal defense to the charge.

Id. at ¶17. The Supreme Court concluded that a law-enforcement officer who witnesses a motorist drift over lane markings in violation of a statute that requires a driver to drive a vehicle entirely within a single lane of traffic has reasonable and articulable suspicion sufficient to warrant a traffic stop, even without further evidence of erratic or unsafe driving.

{¶24} In the case at bar, the record establishes the Nissan drove on top of and over the white lane markings. As the Nissan was in the process of exiting the interstate at the Tuscarawas Street exit, the Nissan drove over the fog line bordering the left-hand lane, drove through a gore, which was marked with white diagonal lines, then, without

signaling, abruptly changed paths across three lanes to the right-hand side, before stopping on the right-hand berm.

**{¶25}** The judge is in the best position to determine the credibility of witnesses, and his conclusion in this case is supported by competent facts. See *State v. Burnside,* 100 Ohio St.3d 152, 154-55, 797 N.E.2d 71, 74(2003). The fundamental rule that weight of evidence and credibility of witnesses are primarily for the trier of fact applies to suppression hearings as well as trials. *State v. Fanning,* 1 Ohio St.3d 19, 20, 437 N.E.2d 583, 584(1982). The trooper's testimony, which is supported by the video evidence admitted during the suppression hearing, represents competent, credible evidence that Lominack was not traveling within the lanes marked for travel. Therefore, the factual finding of the trial court that Lominack was not traveling within the lanes marked for travel is not clearly erroneous.

**{¶26}** Reviewing courts should accord deference to the trial court's decision concerning the credibility of the witnesses because the trial court has had the opportunity to observe the witnesses' demeanor, gestures, and voice inflections that cannot be conveyed to us through the written record, *Miller v. Miller,* 37 Ohio St.3d 71, 523 N.E.2d 846(1988). In *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 81, 461 N.E.2d 1273(1984), the Ohio Supreme Court explained: "[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." See, also *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212(1967), syllabus 1.

**{¶27}** We accept the trial court's conclusion that Lominack's violation of the traffic laws gave Trooper Halstead reasonable suspicion to stop Lominack's vehicle because the factual findings made by the trial court are supported by competent and credible evidence. Thus, the trial court did not err when it denied Lominack's motion to suppress on the basis that the initial stop of his vehicle was valid. *State v. Busse*, 5th Dist. No. 06 CA 65, 2006-Ohio-7047, ¶ 20.

*2. The FST's and Probable Cause to Arrest.*

**{¶28}** Lominack next argues that the trial court erred in admitting the results of the HGN field sobriety test because it was not conducted in substantial compliance with the NHTSA guidelines. He further contends that the trooper lacked sufficient probable cause to arrest him for OVI.

**{¶29}** In *State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, 863 N.E.2d 155, the Court held "... HGN test results are admissible in Ohio without expert testimony so long as the proper foundation has been shown both as to the administering officer's training and ability to administer the test and as to the actual technique used by the officer in administering the test." Id. at ¶27. In accordance with R.C. 4511.19(D)(4)(b) HGN test results are admissible when the test is administered in substantial compliance with testing standards. *Boczar*, at ¶28.

**{¶30}** In the case at bar, Lominack argues that the HGN test should take a total of ninety two seconds and because Trooper Halstead's performance took less time, he did not substantially comply with the NHTSA guidelines.

**{¶31}** The timing required to complete the various elements with respect to both eyes of the HGN test as set forth in the NHTSA manual are approximate. Further, the standard for admissibility is substantial not strict compliance.

**{¶32}** While field sobriety tests must be administered in substantial compliance with standardized procedures, probable cause to arrest does not necessarily have to be based, in whole or in part, upon a suspect's poor performance on one or more of these tests. The totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered. *State v. Homan*, 89 Ohio St.3d 421, 732 N.E.2d 952(2000), *superseded by statute on other grounds as stated in State v. Boczar*, 113 Ohio St.3d 148, 863 N.E.2d 155, 2007–Ohio–1251. In *Homan,* the facts which supported a finding of probable cause were: red and glassy eyes, breath which smelled of alcohol, erratic driving and an admission that the suspect had consumed alcohol.

**{¶33}** The case law is in agreement that probable cause to arrest may exist, even without field sobriety tests results, if supported by such factors as: evidence that the defendant caused an automobile accident; a strong odor of alcohol emanating from the defendant; an admission by the defendant that he or she was recently drinking alcohol; and other indicia of intoxication, such as red eyes, slurred speech, and difficulty walking. *Oregon v. Szakovits*, 32 Ohio St.2d 271, 291 N.E.2d 742(1972); *Fairfield v. Regner*, 23 Ohio App.3d 79, 84, 491 N.E.2d 333(12th Dist. 1985); *State v. Bernard*, 20 Ohio App.3d 375, 376, 485 N.E.2d 783(9th Dist. 1985); *Westlake v. Vilfroy*, 11 Ohio App.3d 26, 27, 462 N.E.2d 1241(8th Dist. 1983); *State v. Judy,* 5th Dist. No. 2007-CAC-120069, 2008-Ohio-4520, ¶27. Further, the Ohio Supreme Court has made clear that

the officer may testify regarding observations made during a defendant's performance of standardized field sobriety tests even absent proof of "strict compliance." *State v. Schmitt* (2004), 101 Ohio St.3d 79, 2004-Ohio-37, 801 N.E.2d 446, (2004), ¶15.

**{¶34}** In the case at bar, the probable cause to arrest Lominack for OVI was supported by the trooper's observation of glossy eyes, odor of alcohol, admission that he had been drinking, statements made by Lominack that he was heading home of I-77 North when he was in fact traveling on I-77 South in the opposite direction of his home, and the PBT test result.

**{¶35}** Accordingly, the totality of the evidence, even excluding the HGN test, gave rise to probable cause to arrest for OVI. *Homan* at 427, 732 N.E.2d 952. As such, we find it was not error for the trial court to determine there was probable cause to support appellant's arrest for OVI.

**{¶36}** In the case at bar, the jury acquitted Lominack of OVI driving under the influence. The jury convicted Lominack of OVI based upon a prohibited level of alcohol in his system. In *State v. Lucas*, the Supreme Court observed,

> The *per se* offenses define "the point the legislature has determined an individual cannot drive without posing a substantial danger, not only to himself, but to others." *State v. Tanner* (1984), 15 Ohio St.3d 1, 6, 15 OBR 1, 5, 472 N.E.2d 689, 693. In determining whether one of these *per se* offenses was committed by the defendant, the trier of fact is not required to find that the defendant operated a vehicle while under the influence of alcohol or drugs, but only that the defendant operated a vehicle within the state and that the defendant's chemical test reading was at the proscribed

level. The critical issue at trial is the accuracy of the test, not the behavior of the accused. See Katz & Sweeney, Ohio's New Drunk Driving Law: A Halfhearted Experiment in Deterrence (1983-1984), 34 Case W.Res.L.Rev. 239, 243.

40 Ohio St.3d 100, 103, 532 N.E.2d 130(1988). Assuming arguendo the HGN test should not have been admitted, we find, in this case, the admission of the HGN test at Lominack's suppression hearing and at trial was harmless beyond a reasonable doubt.

### 3. *Twenty minute observation period.*

**{¶37}** Prior to initiating the PBT, Trooper Halstead asked Lominack if he had anything in his mouth. Lominack responded that he had a tobacco product in his mouth, which he then spit out at the trooper's request. Lominack next argues that the state failed to prove that all of the tobacco was expelled from Lominack's mouth. Further Lominack argues that any remaining tobacco compromised the breath test conducted at the police station.

**{¶38}** In *State v. Steele*, 52 Ohio St.2d 187, 370 N.E.2d 740(1977), the Ohio Supreme Court explained the reason for the 20-minute observational period before testing. The court explained that the observational period is used to eliminate the possibility that the test result is a product of anything other than the suspect's deep-lung breath. Id. at 190, 370 N.E.2d 740. Further, since the "accuracy of the test results can be adversely affected if the suspect either ingests material orally, like food or drink, or regurgitates material internally, by belching or vomiting, the suspect must be observed" for 20 minutes to verify that no external or internal material causes a false reading. *State v. Douglas,* 1st Dist. No. C-030897, 2004-Ohio-5726, ¶ 9, citing *Steele,* 52 Ohio

St.2d at 190, 370 N.E.2d 740; *State v. Camden,* 7th Dist. No. 04 MO 12, 2005-Ohio-2718, 2005 WL 1303207, ¶15. In *Steele,* the court further reasoned that once the trooper demonstrated it was highly improbable that the subject ingested any item during the 20-minute period, it was up to the defendant to "overcome that inference" with proof that she had ingested some substance. Moreover, ingestion has to be more than just "hypothetically possible." *Steele* at 192, 370 N.E.2d 740; accord *State v. Faykosh,* 6th Dist. No. L-01-1244, 2002-Ohio-6241; *State v. Embry,* 12th Dist. No. CA2003-11-110, 2004-Ohio-6324, ¶ 25; *State v. Rennick,* 7th Dist. No. 02 BA 19, 2003- Ohio-2560, ¶ 25; *State v. Siegel*, 138 Ohio App.3d 562, 568-569, 741 N.E.2d 938(3rd Dist. 2000); *State v. Householder*, 181 Ohio App.3d 269, 2009-Ohio-826, 908 N.E.2d 987(5th Dist.), ¶16.

{¶39} In the case at bar, neither party elicited testimony concerning at what point in time prior to the administration of the BAC test Trooper Halstead began his 20-minute observation of Lominack. Accordingly, Lominack introduced nothing to suggest that he did, in fact, ingest some material during that 20-minute period. A mere assertion that ingestion during the 20-minute period was hypothetically possible, without more, did not render the test results inadmissible. *State v. Raleigh,* 5th Dist. No. 2007-CA-31, 2007-Ohio-5515, ¶ 51.

{¶40} Lominack's assertion that some portion of the tobacco product remained in his mouth after he expelled it at the scene is a mere hypothetical possibility insufficient to invalidate the test results in this case.

*4. Senior operators permit.*

{¶41} Lominack argues the results of his breath test should be suppressed because Trooper Shepard who performed the calibration of the BAC Datamaster prior

to Lominack's test and Trooper Starnes who performed the calibration of the BAC Datamaster after Lominack's test, each of whom have an access card for the Intoxilyzer 8000 instrument, are prohibited from operating a BAC Datamaster instrument regardless of his certification on the machine. In support, Lominack cites the following language from Ohio Adm.Code 3701–53–09(D):

> Individuals desiring to function as operators using instruments listed under paragraph (A)(3) of rule 3701–53–02 of the Administrative Code shall apply to the director of health for operator access cards on forms prescribed and provided by the director of health. The director of health shall issue operator access cards to perform tests to determine the amount of alcohol in a person's breath to individuals who qualify under the applicable provisions of rule 3701–53–07 of the Administrative Code. Individuals holding operator access cards issued under this rule shall use only those evidential breath-testing instruments for which they have been issued an operator access card.

**{¶42}** In the case at bar, the record establishes that the troopers held an access card for the Intoxilyzer 8000, as well as valid permits to operate the BAC Datamaster instrument.

**{¶43}** We have previously addressed this issue in *State v. Nethers*, 5th Dist. No. 12–CA–30, 2012– Ohio– 5198,

> Appellant further asserts the Ohio Administrative Code Section 3701– 53– 09( D) prohibited Officer Martin, who administered the test and has an operator access card for the Intoxilyzer 8000, from using the BAC

DataMaster test. Appellant maintains pursuant to the code, the officer could only perform those tests for which he holds an individual permit. Only one breath testing instrument requires an operator access card, the Intoxilyzer 8000. Officer Martin had a Senior Operator's Permit to administer chemical breath tests using the BAC DataMaster, and had also been issued an operator access card for the Intoxilyzer 8000.

In *State v. Hudepohl*, 2011-Ohio-6917, the court considered the issue raised herein, determining the argument led to absurd results, we agree. Therein, a police officer held both a senior operator permit for one type of blood-alcohol breath testing instrument and an operator access card for a second type of breath testing instrument. The court held merely holding an operator access card for a second type of instrument did not prohibit the officer from operating the first type of instrument pursuant to his senior operator permit.

*Nethers,* ¶¶13-14; Accord, *State v. Sisson*, 5th Dist. No. 2012CA00169, 2013-Ohio-1896, ¶10; *State v. Castle,* 10th Dist. No. 12AP-369, 2012-Ohio-6028, ¶¶ 11-13. We find our opinion in *Nethers* to be applicable and controlling sub judice.

{¶44} For all the foregoing reasons, Lominack's first assignment of error is overruled in its entirety.

II.

{¶45} In his second assignment of error, Lominack contends that the trial court erred in finding him guilty of a marked lanes violation.

**{¶46}** Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶ 146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶ 68.

**{¶47}** Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio–355. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis sic.) Id. at 387, 678 N.E.2d 541, quoting Black's Law Dictionary (6th Ed. 1990) at 1594.

**{¶48}** When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting

testimony. Id. at 387, 678 N.E.2d 541, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, supra, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

\* \* \*

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

**{¶49}** In the case at bar, Lominack challenges his conviction for a marked lanes violation. R.C. 4511.33, Rules for Driving in Marked Lanes, provides in part,

(A) Whenever any roadway has been divided into two or more clearly marked lanes for traffic, or wherever within municipal corporations

traffic is lawfully moving in two or more substantially continuous lines in the same direction, the following rules apply:

(1) A vehicle or trackless trolley shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety.

**{¶50}** In the case at bar, the record establishes the Nissan drove on top of and over the white lane markings. As the Nissan was in the process of exiting the interstate at the Tuscarawas Street exit, the Nissan drove over the fog line bordering the left-hand lane, drove through a gore, which was marked with white diagonal lines, then, without signaling, abruptly changed paths across three lanes to the right-hand side, before stopping on the right-hand berm. The trooper's testimony, which is supported by the video evidence admitted during the suppression hearing, represents competent, credible evidence that Lominack was not traveling within the lanes marked for travel.

**{¶51}** Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Lominack had committed a marked lanes violation. We hold, therefore, that the state met its burden of production regarding each element of the crime and, accordingly, there was sufficient evidence to support Lominack's conviction.

**{¶52}** Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'" *State v. Pallai,* 7th Dist. No. 07 MA 198, 2008–Ohio–6635, ¶ 31,

*quoting State v. Woullard,* 158 Ohio App.3d 31, 2004–Ohio–3395, 813 N.E.2d 964, ¶ 81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke,* 7th Dist. No. 99 CA 149, 2002–Ohio– 1152, at ¶ 13, *citing State v. Gore* (1999), 131 Ohio App.3d 197, 201, 722 N.E.2d 125. The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter,* 131 Ohio St.3d 67, 2011–Ohio–6524, 960 N.E.2d 955, ¶ 118. *Accord, Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger,* 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

**{¶53}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, *quoting Martin,* 20 Ohio App.3d at 175, 485 N.E.2d 717. The judge was in the best position to evaluate this competent, credible evidence, and we will not substitute our judgment for that of the trier of fact. The judge neither lost his way nor created a miscarriage of justice in convicting Lominack of the charge.

**{¶54}** Lominack's second assignment of error is overruled.

III.

**{¶55}** In his third assignment of error, Lominack contends that the trial court erred by not allowing him to present expert testimony at trial. Subsumed within this generalized objection are two challenges to the trial court's ruling. Specifically, Lominack contends that: (1). He was denied the opportunity to depose his expert; and

(2). His right to present a defense was abridged by the trial court's exclusion of evidence challenging the BAC test results.

*1. Deposition of defense expert.*

**{¶56}** Crim.R. 15 Depositions, provides in part,

(A) If it appears probable that a prospective witness will be unable to attend or will be prevented from attending a trial or hearing, and if it further appears that his testimony is material and that it is necessary to take his deposition in order to prevent a failure of justice, the court at any time after the filing of an indictment, information, or complaint shall upon motion of the defense attorney or the prosecuting attorney and notice to all the parties, order that his testimony be taken by deposition and that any designated books, papers, documents or tangible objects, not privileged, be produced at the same time and place.

**{¶57}** Accordingly, Crim.R. 15 places the burden on the party who requests the deposition to demonstrate to the court: 1). the unavailability of the witness for trial and 2). the witness's testimony is necessary in order to prevent a failure of justice. Crim.R. 15 vests the trial court with discretion to grant or overrule motions for pretrial depositions. *State v. Hill*, 12 Ohio St.2d 88, 232 N.E.2d 394(1967), paragraph one of the syllabus (construing the analogous provisions of R.C. 2945.50). The decision of the court in such matters will not be disturbed unless an abuse of discretion is shown. *Id.* The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *State v. Myers,* 97 Ohio St.3d 335, 348, 780 N.E.2d 186, 2002–Ohio–6658, ¶ 75.

**{¶58}** Evid.R. 103(A) requires any claim of error relating to the exclusion of evidence to (1) affect a substantial right of the party and (2) the substance of the excluded evidence must be made known to the court by proffer or should be apparent from the context within which questions were asked.

**{¶59}** "The purpose of a proffer is to assist the reviewing court in determining, pursuant to Evid.R. 103, whether the trial court's exclusion of evidence affected a substantial right of the appellant." *In re Walker*, 162 Ohio App.3d 303, 2005-Ohio-3773, 833 N.E.2d 362(11th Dist.), ¶ 37; *State v. Mullins*, 2nd Dist. No. 21277, 2007-Ohio-1051, ¶ 36.

**{¶60}** The trial court did not deny Lominack the opportunity to proffer Staubus' testimony. The primary issue to which Staubus' testimony would have been addressed is, in fact, clear from the record: 1). whether or not the reading that is given on the BAC Datamaster has a variability to it; 2). whether or not there is a requirement that more than one test be given especially in a situation where the reading is minimally above the standard; and 3). what effect the amount of alcohol would have had on a particular individual based upon consumption. (Supp. T., Oct. 30, 2012 at 8-9).

**{¶61}** In the case at bar, the trial court determined that the state had satisfied its burden of demonstrating substantial compliance with the ODH regulations, and therefore, the BAC test results were deemed admissible following the suppression hearing. However, this does not preclude a defendant from challenging the test results at trial under the Ohio Rules of Evidence. Defendant's can still make evidentiary objections at trial challenging the competency, admissibility, relevancy, authenticity, and credibility of the tests. *State v. French* 72 Ohio St.3d 446, 452, 650 N.E.2d 887(1995);

*State v. Luke,* 10th Dist. No. 05AP–371, 2006-Ohio-2306,¶ 26; *State v. Edwards,* 107 Ohio St.3d 169, 2005-Ohio-6180, 837 N.E.2d 752, ¶ 16.

**{¶62}** This Court has addressed Lominack's margin of error existing in blood alcohol testing by the BAC Datamaster machine, and the preclusion of expert testimony of Dr. Alfred Staubus on that issue. *State v. Sommer*, 5th Dist. No. 04CA36, 2005-Ohio-1707. In *Sommer*, this court held when breath alcohol content was measured on an approved, properly calibrated and properly checked breath-testing instrument, the margin of error existing in blood alcohol testing by the BAC Datamaster machine is no longer part of the analysis in determining the relevant alcohol content. Id. at ¶ 24. In reaching this conclusion, the court in *Sommer noted,*

> "We acknowledge we do not know if a reading on the breath test is the 'actual' breath content of the person. Rather, the prohibited breath alcohol content set by the legislature is that as it is measured on an approved, properly calibrated, and properly checked breath-testing instrument. This is an important point, because appellant seems to argue the error variance should be applied to individual breath tests. The code does not provide for such an analysis. The error variance exists only for the instrument check. Once the machine is checked, the variance is no longer part of the analysis."

*Sommer* at ¶ 3, quoting *State v. Brant*, 5th Dist. No. 2002AP020008, 2002-Ohio-5474, ¶121.

**{¶63}** We find our opinion in *Sommer and Brant* to be applicable and controlling sub judice.

**{¶64}** Lominack has not cited relevant case law, statutes or regulations that impose a requirement that a second BAC test be administered when the results are marginally above the per se limit. The law finds a per se violation of the statute when the test result exceeds the proscribed level, after analysis on a proper testing instrument. We do not deny that the trooper had the option of conducting a second test. However, Lominack does not point to, nor are we aware of, any code section that would require the trooper to do so under circumstances of this case.

**{¶65}** No prejudice resulted from the trial court's refusal to permit Staubus' testimony concerning the effect the amount of alcohol would have had on a particular individual based upon consumption. The jury acquitted Lominack of driving under the influence. The jury convicted Lominack of OVI based upon a prohibited level of alcohol in his system. As we have previously discussed in Lominack's first assignment of error, the critical issue at trial is the accuracy of the test, not the behavior of the accused.

**{¶66}** Lominack renewed his request to proffer Staubus' testimony before resting his case during the jury trial. (2T. at 182). The trial court indicated that it had already denied Lominack's requests for a continuance and to depose Staubus.

**{¶67}** Further, Lominack was given the opportunity at the conclusion of the suppression to proffer any testimony for the record. (Supp. T., Nov. 8, 2012 at 110-111). The trial court even indicated that the workings of the machine were not going to be an issue at the trial. (Id.) Lominack chose to proffer only information about the Intoxilyzer 8000 and the variance built into that machine and the fact that contaminants in the mouth could affect the BAC Datamaster.

**{¶68}** Lastly, there was no evidence presented that Lominack had any contamination in his mouth during the testing process. Lominack argues only that there could have been some tobacco left in his mouth at the time of the test. However, Lominack testified at trial that he informed Trooper Halstead that he had chewing tobacco in his mouth. Trooper Halstead asked him to spit it out, and to make sure it was all out. Lominack told Trooper Halstead that he thought he had it all out when asked. (2T. at 176-177).

**{¶69}** Accordingly, the trial court's decision to deny Lominack the opportunity to depose Staubus and to present his testimony at trial was not unreasonable, arbitrary or unconscionable.

**{¶70}** Lominack's third assignment of error is overruled in its entirety.

IV.

**{¶71}** In his fourth assignment of error, Lominack contends that it was error for the trial court to prevent him from challenging at trial the manner in which the trooper administered the HGN test.

**{¶72}** "It is axiomatic that a determination as to the admissibility of evidence is a matter within the sound discretion of the trial court. See *Calderon v. Sharkey* (1982), 70 Ohio St.2d 218, 24 O.O.3d 322, 436 N.E.2d 1008. The issue of whether testimony is relevant or irrelevant, confusing or misleading is best decided by the trial judge who is in a significantly better position to analyze the impact of the evidence on the jury." *State v. Taylor*, 39 Ohio St.3d 162, 164, 529 N.E.2d 1382(1988).

**{¶73}** Assuming arguendo that it was error to deny Lominack the opportunity challenge the credibility of the HGN test at trial, we find such error to be harmless

beyond a reasonable doubt. The jury acquitted Lominack of driving under the influence. The jury convicted Lominack of OVI based upon a prohibited level of alcohol in his system. The critical issue at trial of a prohibited level violation is the accuracy of the test, not the behavior of the accused. *State v. Boyd*, 18 Ohio St.3d 30, 479 N.E.2d 850(1985). The HGN test results are not relevant to a determination of whether 1). Lominack was operating a vehicle within this state and 2). whether at the time he had a concentration of eight-hundredths of one gram or more but less than seventeen-hundredths of one gram by weight of alcohol per two hundred ten liters of his breath.

{¶74} Lominack's fourth assignment of error is overruled.

V.

{¶75} In his fifth assignment of error, Lominack argues that the trial court erred in refusing his proffer of Staubus' testimony and report.

{¶76} Evid.R. 103(A) requires any claim of error relating to the exclusion of evidence to (1) affect a substantial right of the party and (2) the substance of the excluded evidence must be made known to the court by proffer or should be apparent from the context within which questions were asked.

{¶77} "The purpose of a proffer is to assist the reviewing court in determining, pursuant to Evid.R. 103, whether the trial court's exclusion of evidence affected a substantial right of the appellant." *In re Walker*, 162 Ohio App.3d 303, 2005-Ohio-3773, 833 N.E.2d 362(11th Dist.), ¶ 37; State v. Mullins, 2nd Dist. No. 21277, 2007-Ohio-1051, ¶ 36.

{¶78} It is error for a trial court to deny a defendant's motion to proffer. *State v. Conkle*, 2nd Dist. Nos. 24161, 24163, 2012-Ohio-1772, ¶37; *State v. Gooch*, 7th Dist.

No. 85-J-32, 1986 WL 69905(Sept. 5, 1986); *Famous Supply Co. v. Adm. Bureau of Empl. Services,* 6th Dist. No. L-85-313, 1986 WL 4662(Apr. 18, 1986).

**{¶79}** However, as we have discussed in Lominack's third assignment of error, the trial court did not deny Lominack the opportunity to proffer Staubus' testimony. While it would be preferable for the trial court to accept the expert's report into the record for purposes of appeal, we have found any error to do so harmless in the case at bar.

**{¶80}** Lominack's fifth assignment of error is overruled.

**{¶81}** The judgment of the Canton Municipal Court, Stark County, Ohio is hereby affirmed.


By Gwin, P.J.,

Hoffman, J., and

Delaney, J., concur


_____
HON. W. SCOTT GWIN


_____
HON. WILLIAM B. HOFFMAN


_____
HON. PATRICIA A. DELANEY


WSG:clw 0610

[Cite as *State v. Lominack*, 2013-Ohio-2678.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| EDWARD F. LOMINACK III | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2012CA00213 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Canton Municipal Court, Stark County, Ohio is hereby affirmed. Costs to appellants.


_____
HON. W. SCOTT GWIN


_____
HON. WILLIAM B. HOFFMAN


_____
HON. PATRICIA A. DELANEY