### In re WALKER.

[Cite as *In re Walker*, 162 Ohio App.3d 303, 2005-Ohio-3773.]

Court of Appeals of Ohio,
Eleventh District, Ashtabula County.

No. 2005–A–0008.

July 22, 2005.

304

Laura M. DiGiacomo, counsel for Ashtabula County Children Services Board.
Phillip L. Heasley, for appellant Tanna Howser.

Jonathan W. Winer, for appellant Gaylene Howser.

Lisa V. Nelson, guardian ad litem for Tanna Howser.

Tracey K. O'Day, guardian ad litem for Hope Walker.

---

WILLIAM M. O'NEILL, Judge.

{¶ 1} Appellants, Tanna Howser and Gaylene Howser, appeal the judgment entered by the Ashtabula County Court of Common Pleas granting a motion for permanent custody of Hope Walker filed by appellee, Ashtabula County Children Services Board.

{¶ 2} Hope Walker was born in November 1999. Hope's mother, Tanna Howser, was 15 years old at that time. Johnny Walker is the alleged father of Hope. He was 27 years old at the time of her birth. He did not attend the hearings at the lower court level and is not involved in this appeal. Gaylene Howser is Hope Walker's maternal grandmother.

{¶ 3} Shortly after Hope's birth, appellee was granted temporary custody of her. There were concerns about Tanna's ability to care for Hope, due to Tanna's age and Tanna's being mildly to moderately mentally retarded.

{¶ 4} Appellee filed a motion for permanent custody of Hope. In addition to Tanna and Gaylene, the parties at the trial court level included Thomas Howser, who is Tanna's father, and Kim Johnson, who is Tanna's legal custodian. Tanna lived with Kim Johnson during the first hearing in this matter. Also, Tracey O'Day was appointed guardian ad litem for Hope, and Lisa Nelson was appointed guardian ad litem for Tanna. A hearing was held before a magistrate on August 16, 2001, and was continued to December 4, 2001, and then to March 18, 2002. The magistrate issued a decision recommending that appellee be granted permanent custody of Hope. Tanna, Gaylene, and Kim Johnson filed objections to the magistrate's decision. In a September 3, 2002 judgment entry, the trial court overruled the objections to the magistrate's decision and granted appellee's motion for permanent custody.

{¶ 5} Tanna, Gaylene, and Kim Johnson appealed the September 3, 2002 judgment of the trial court to this court. In Tanna's appeal, this court reversed the judgment of the trial court and remanded the matter for further proceedings due to inadmissible hearsay statements in Dr. Patricia Gillette's testimony and report, which was admitted as an exhibit.[1] Due to our reversal in Tanna's appeal, the judgment from which Gaylene appealed was also reversed and the cause was

---

1. *In re Walker*, 11th Dist. No. 2002–A–0089, 2003-Ohio-799, 2003 WL 474124.

remanded.[2]   Likewise, the judgment from which Kim Johnson appealed was reversed and the cause was remanded due to the disposition in Tanna's appeal.[3]

{¶ 6} Our opinions indicated that the matter was remanded "for further proceedings consistent with" the opinions.[4]   It is apparent that there was some confusion as to how the trial court was to proceed.   The trial court requested that the parties submit briefs on the issue.   Thereafter, on June 16, 2004, a hearing was held before the magistrate.   The magistrate described the hearing as a continuation of the prior permanent-custody hearings.   The purpose of the hearing was to allow appellee to correct the inadmissible hearsay statements. Dr. Robert Kurtz and Dr. Gillette testified at the hearing, and all parties were permitted to cross-examine them.   Appellants were not permitted to offer any new evidence at the hearing.

{¶ 7} Following the June 2004 hearing, the magistrate again recommended that appellee be granted permanent custody of Hope. Tanna, Gaylene, and Kim Johnson filed objections to the magistrate's decision.   In a December 21, 2004 judgment entry, the trial court overruled the objections to the magistrate's decision and granted appellee's motion for permanent custody of Hope.

{¶ 8} Tanna filed a notice of appeal on January 20, 2005.   This appeal was assigned case No. 2005–A–0008.   Gaylene also filed a notice of appeal on January 20, 2005.   The clerk of court's office did not assign Gaylene's appeal an individual case number.   The parties filed their briefs for Gaylene's appeal under case No. 2005–A–0008.   We will consider both Tanna's and Gaylene's appeals in this opinion.   The other parties did not appeal the trial court's judgment.

{¶ 9} Tanna raises three assignments of error.   Gaylene raises two assignments of error.   These assigned errors will be addressed out of order.   In addition, when possible, Tanna and Gaylene's assigned errors will be addressed in a consolidated fashion.   However, prior to addressing appellants' assignments of error, we will address the decision of the trial court to hold an additional hearing to correct the introduction of improper hearsay statements in the initial hearing.

{¶ 10} We note that the Supreme Court of Ohio has recognized the importance of parents' rights to raise their children.   " 'Permanent termination of parental rights has been described as "the family law equivalent of the death

---

2.  *In re Walker*, 11th Dist. No. 2002–A–0087, 2003-Ohio-798, 2003 WL 473987.

3.  *In re Walker*, 11th Dist. No. 2002–A–0090, 2003-Ohio-795, 2003 WL 474280.

4.  See *In re Walker*, 11th Dist. No. 2002–A–0089, 2003-Ohio-799, 2003 WL 474124, at ¶ 43.

penalty in a criminal case." * * * Therefore, parents "must be afforded every procedural and substantive protection the law allows." ' " [5]

{¶ 11} The parties advocated several different approaches as to how the case should be resolved on remand. These approaches included (1) holding an entirely new hearing and proceeding de novo, (2) permitting the trial court to rule solely on the admissible evidence before it without considering the inadmissible hearsay statements, and (3) hearing additional evidence to lay a proper foundation for the hearsay evidence. The trial court took the third approach.

{¶ 12} In their briefs on remand, several parties cite *Armstrong v. Marathon Oil Co.,* wherein the Supreme Court of Ohio held:

{¶ 13} "It is basic law that an 'action of the Court of Appeals in reversing the cause and remanding the case to the Court of Common Pleas for further proceedings has the effect of reinstating the cause to the Court of Common Pleas *in statu quo ante.* The cause is reinstated on the docket of the court below in precisely the same condition that obtained before the action that resulted in the appeal and reversal.' " [6]

{¶ 14} In the case sub judice, the action that resulted in the appeal and reversal was the permanent custody hearing. While the specific reason for this court's remand was the inadmissible hearsay contained in Dr. Gillette's testimony and report, her testimony was an essential part of the entire hearing. Her testimony cannot be viewed in a vacuum, extracted, repaired, and replaced as if there was never error. Therefore, upon this court's remand, the matter should have been returned to the trial court at the point when appellee's motion for permanent custody was pending, prior to the hearing.

{¶ 15} We note that several appellate cases have been remanded for new hearings when the judgment of the trial court is reversed in a permanent-custody matter due to the improper admission of inadmissible hearsay evidence.[7] In addition, the Fifth District Court of Appeals has reversed the judgment of the

5. *In re Hoffman,* 97 Ohio St.3d 92, 2002-Ohio-5368, 776 N.E.2d 485, at ¶ 14, quoting *In re Hayes* (1997), 79 Ohio St.3d 46, 48, 679 N.E.2d 680, quoting *In re Smith* (1991), 77 Ohio App.3d 1, 601 N.E.2d 45.

6. (Emphasis added by Supreme Court of Ohio.) *Armstrong v. Marathon Oil Co.* (1987), 32 Ohio St.3d 397, 418, 513 N.E.2d 776, quoting 5 Ohio Jurisprudence 3d (1978), 426, Appellate Review, Section 717.

7. *In re Lucas* (Nov. 27, 2000), 7th Dist. No. 99 JE 63, 2000 WL 1741735; *In re McLemore,* 10th Dist. Nos. 03AP–714 and 03AP–730, 2004-Ohio-680, 2004 WL 259252, at ¶ 10–14; and *In re Washington* (2001), 143 Ohio App.3d 576, 582, 758 N.E.2d 724.

lower court and remanded a matter for a new trial when there was inadmissible evidence introduced.[8]

{¶ 16} Moreover, several assignments of error from the first round of appeals were rendered moot by this court's finding error in the improper admission of the inadmissible hearsay statements from Dr. Gillette. Kim Johnson's second and third assignments of error were ruled moot.[9] Gaylene's second, third, fourth, and fifth assignments of error were ruled moot.[10] Finally, Tanna's second assignment of error was declared moot.[11] While many of these assigned errors claimed that the trial court erred in its final disposition of the matter, one of the assigned errors alleged an error based on the participation of the guardian ad litem.[12] This court's disposition of this latter assigned error as moot is evidence that this court intended that the cause be remanded for a new hearing.

{¶ 17} In certain cases, the option of having the trial court rule on the remaining evidence without considering the inadmissible hearsay evidence could be a viable option.

{¶ 18} "Where a trial judge acts as the finder of fact, as in this case, a reviewing court should be reluctant to overturn a judgment on the basis of the admission of inadmissible testimony, unless it appears that the trial court actually relied on such testimony in arriving at its judgment, because the trial judge is presumed capable of disregarding improper testimony." [13]

{¶ 19} This court addressed this notion in Tanna's first appeal. Specifically, this court held:

{¶ 20} "A court of appeals may determine that there was not clear and convincing evidence to justify the termination of parental rights if there is excessive reliance on hearsay evidence by the trial court.[14] Here, we offer no opinion as to whether there was clear and convincing evidence without the

8. *In re Daywalt* (Mar. 19, 2001), 5th Dist. Nos. 2000CA332 and 2000CA355.

9. *In re Walker*, 11th Dist. No. 2002–A–0090, 2003-Ohio-795, 2003 WL 474280, at ¶ 17.

10. *In re Walker*, 11th Dist. No. 2002–A–0087, 2003-Ohio-798, 2003 WL 473987, at ¶ 19.

11. *In re Walker*, 11th Dist. No. 2002–A–0089, 2003-Ohio-799, 2003 WL 474124, at ¶ 42.

12. *In re Walker*, 11th Dist. No. 2002–A–0090, 2003-Ohio-795, 2003 WL 474280, at ¶ 17.

13. *In re T.M.*, 8th Dist. No. 83933, 2004-Ohio-5222, 2004 WL 2340654, at ¶ 24, citing *In re Sims* (1983), 13 Ohio App.3d 37, 41, 13 OBR 40, 468 N.E.2d 111, and *In re M.H.*, 8th Dist. No. 80620, 2002-Ohio-2968, 2002 WL 1307426, at ¶ 73. See, also, *In re Cody T.* (Nov. 7, 1997), 6th Dist. No. L–96–194, 1997 WL 703331.

14. *In re Yearian* (Sept. 27, 1996), 11th Dist. Nos. 95–P–0102 and 95–P–0103, 1996 WL 589264, citing *In re Brofford* (1992), 83 Ohio App.3d 869, 873, 615 N.E.2d 1120.

inadmissible hearsay evidence. This is because the evidence of Dr. Gillette was relied upon by the magistrate in making the determination that appellant's parental rights should be terminated. Both the in-court testimony and report of Dr. Gillette were so heavily tainted with hearsay statements that it is impossible to separate the admissible evidence from the excessive hearsay statements. Similarly, the court and magistrate relied on the same facts imparted through this impermissible hearsay." [15]

{¶ 21} Accordingly, this court concluded that the inadmissible hearsay evidence was significantly intertwined with the admissible evidence. Thus, an exercise in which the trial court tried to resolve this issue by attempting to consider only the nonhearsay evidence would not have satisfied this court's concerns regarding the inadmissible hearsay evidence.

{¶ 22} Finally, as noted below, bringing a second witness into court to testify does not cure the hearsay statements made by the first witness. When Dr. Gillette testified that Dr. Kurtz found "X," this was an inadmissible hearsay statement. Dr. Kurtz's testimony that he did, in fact, find "X," does not change the fact that Dr. Gillette's testimony was hearsay. At best, it renders the hearsay statements harmless error. In addition, permitting one party the opportunity to present new evidence that was not offered at the initial hearing while depriving the opposing party the same opportunity violates appellants' due-process rights.

{¶ 23} We acknowledge that this court created some of the confusion by remanding the matter "for further proceedings consistent with" the opinions. A clearer directive would have alleviated some of the uncertainty upon remand. However, these proceedings are not about assessing blame. Our current job is to ensure that appellants' rights are not compromised. Thus, for this reason and the additional reasons set forth below, we must reverse the judgment of the trial court and remand this matter for an entirely new hearing.

{¶ 24} Tanna's first assignment of error is as follows:

{¶ 25} "The court failed to correct error upon remand by again permitting hearsay into the permanent custody proceeding in the form of the testimony of Dr. Patricia Gillette."

{¶ 26} Initially, we note that the trial court labeled the new proceeding a "continuation" of the previous hearing. None of Dr. Gillette's prior testimony was stricken, thus, it is still part of the record before us. Appellee argues that Dr. Gillette's report was not submitted into evidence. We disagree. The report was admitted into evidence in the initial hearing. The trial court deemed the

---

**15.** *In re Walker,* 11th Dist. No. 2002–A–0089, 2003-Ohio-799, 2003 WL 474124, at ¶ 36.

June 2004 hearing a "continuation" of the initial hearing. Therefore, her report is still in the record as an admitted exhibit. Accordingly, the inadmissible hearsay from the initial hearing, including the references to Tanna's alleged sexual abuse of Johnny Walker's children, was still in the record before the trial court and is now before this court.

{¶ 27} Tanna claims that there was additional inadmissible hearsay conveyed at the new hearing. Tanna argues that Dr. Gillette's reliance on collateral sources caused her testimony to be inadmissible hearsay. We disagree. At the new hearing, Dr. Gillette specifically testified that she formed her opinions based solely on her interviews with Tanna. She stated that she checked the collateral sources only to verify that information. In addition, we note that Dr. Gillette did not testify to the information she obtained from the collateral sources, such as the alleged sexual abuse of Johnny Walker's children.

{¶ 28} As we have already noted, in certain circumstances a trial court may be in a position to disregard inadmissible hearsay statements.[16] Again, in the instant matter, the hearsay statements are so intertwined with the admissible evidence that the exercise may not be realistic. Moreover, we are troubled by Dr. Gillette's inconsistent statements. In the first trial, she specifically testified that the collateral sources of information went to her ultimate assessment of Tanna's situation. Then, at the "continued" hearing, she testified that the collateral sources were not used in making her diagnosis, only in confirming that diagnosis. This situation is even more problematic because the only exhibit admitted at both hearings was Dr. Gillette's report. This report is in the record and is the same report that this court found inadmissible due to the hearsay statements.

{¶ 29} Tanna's first assignment of error has merit.

{¶ 30} Tanna's second assignment of error is as follows:

{¶ 31} "The trial court erred upon remand by permitting children services to introduce new evidence in the form of the testimony of Dr. Robert Kurtz."

{¶ 32} Gaylene's second assignment of error is as follows:

{¶ 33} "The court erred in considering any new evidence heard at the June 16, 2004 hearing, on remand, without allowing other parties to present new evidence."

{¶ 34} Appellee argues that appellants are precluded from raising this issue on appeal because they did not proffer evidence at the trial court level. Provided a substantial right is affected, an appellant preserves error if "the

---

16. See *In re T.M.*, 2004-Ohio-5222, 2004 WL 2340654, at ¶ 24.

substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." [17]

{¶ 35} First, the nature of the evidence was evident from the discussions between the magistrate and counsel. Appellants wished to present evidence to rebut the new testimony presented by Dr. Gillette. In addition, the magistrate made it clear that appellants were not permitted to offer *any* new evidence at the June 2004 hearing. Specifically, the magistrate ruled:

{¶ 36} "No, but unless—I think—at least I took it, unless you can show me some evidence that you should have presented back at the last evidentiary hearing, I'm not doing new evidence. We could do that all day on every single case. And I don't think that was what the Eleventh District remand was about. The remand was specifically to, for the lack of a better term, repair the hearsay, at least that's how I interpreted the Eleventh District Court of Appeals. But of course, your objection is on the record, Mr. Winer."

{¶ 37} Appellants properly raised the issue at the trial court level. The magistrate ruled that they were not permitted to offer any new evidence. At that point, the objection was made. The purpose of a proffer is to assist the reviewing court in determining, pursuant to Evid.R. 103, whether the trial court's exclusion of evidence affected a substantial right of the appellant. [18] In this case, a proffer would have been extremely time consuming. In addition, it would not have helped this court review the claimed error. This was not an instance where a party attempted to have one witness testify about a certain event, where a proffer could be helpful. Instead, the trial court precluded appellants from offering any evidence. Appellants are not claiming an evidentiary error occurred where a proffer would be beneficial. Rather, appellants are alleging the trial court violated their due process rights by precluding them from having an equal opportunity to be heard.

{¶ 38} This court has held that "[c]ivil due process requires notice and an opportunity to be heard." [19] In addition, the individual must be given the " 'opportunity to be heard "at a meaningful time and in a meaning manner." ' " [20]

---

17. Evid.R. 103(A)(2).

18. *In re Byerly*, 11th Dist. Nos. 2001–P–0158 and 2001–P–0159, 2004-Ohio-523, 2004 WL 231804, at ¶ 24, citing *Fireman's Fund Ins. Co. v. Mitchell–Peterson, Inc.* (1989), 63 Ohio App.3d 319, 329, 578 N.E.2d 851, citing *State v. Gilmore* (1986), 28 Ohio St.3d 190, 28 OBR 278, 503 N.E.2d 147, syllabus.

19. *Williams v. Williams* (Sept. 29, 2000), 11th Dist. No. 99–A–0008, 2000 WL 1460030, citing *Goldberg v. Kelly* (1970), 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287.

20. *Holz v. Holz* (Nov. 16, 2001), 11th Dist. No. 2001–A–0003, 2001 WL 1453900, quoting *Mathews v. Eldridge* (1976), 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18, quoting *Armstrong v. Manzo* (1965), 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62.

"Thus, at a minimum, due process of law requires that when a court conducts a hearing, it gives the parties an opportunity to be heard." [21]

{¶ 39} While the trial court concluded that Dr. Kurtz's testimony was only offered to lay a foundation for Dr. Gillette's testimony, his testimony was, in fact, new evidence. Dr. Kurtz did not testify at the first hearing. At the June 2004, "continued" hearing, he offered a professional opinion that Tanna was not capable of taking care of Hope. The magistrate relied on this testimony in support of her decision recommending that Tanna's parental rights be terminated. Specifically, the magistrate included the following statement in her decision, "Dr. Kurtz indicated that he would not recommend Hope be placed in the Howser home or with Tanna." As a matter of law, appellants have a right to provide evidence to contradict this conclusion.

{¶ 40} Again, cases involving the termination of parental rights have been declared to be the "family law equivalent of the death penalty," and parents are entitled to the utmost procedural protections.[22] Therefore, we must ask whether the procedure employed by the trial court would be permissible in a capital case. The answer is no. Certainly, at a minimum, due process requires that appellants be permitted to offer their own evidence to rebut the new evidence presented by the agency. This is especially true when the magistrate directly relies on the new evidence to support her decision to recommend the termination of a mother's parental rights.

{¶ 41} Appellants' second assignments of error have merit.

{¶ 42} Tanna's third assignment of error is as follows:

{¶ 43} "Children's services failed to prove by clear and convincing evidence that parental reunification could not occur, and that an award of permanent custody was in the subject child's best interests, and the court therefore erred in awarding permanent custody of the subject child to children's services."

{¶ 44} Gaylene's first assignment of error is as follows:

{¶ 45} "The trial court erred in relying upon the magistrate's amended decision of October 8, 2004 in awarding permanent custody of Hope Walker to Ashtabula County Children Services Board."

{¶ 46} Due to the above analysis, these assignments of error are moot.

{¶ 47} We are again remanding this matter to the trial court. Unfortunately, nearly six years have passed since Hope was removed from her mother's custody. The parties' situations may have changed during that time. Specifically, when

---

21. Id.

22. See *In re Hoffman,* supra.

this case was initiated, the question was whether a teenage mother could provide adequate care for her newborn daughter. Now, the mother is in her early twenties, and the child is school-aged. We are remanding this matter to the trial court to conduct a de novo hearing on appellee's motion for permanent custody. At the new permanent-custody hearing, the trial court is to consider all relevant evidence relating to whether Tanna's parental rights should be terminated. Thus, the hearing is not limited to events that occurred prior to the initial hearing date. Rather, all relevant evidence relating to events that have occurred up to and including the new hearing date, including the results of any current psychological examinations, may be introduced. In addition, the trial court's determination of appellee's motion should be based on the status of the parties, including their current ages, at the time of the de novo hearing. Finally, in fairness to all parties, as well as the magistrate, we suggest that a different magistrate be assigned to hear the de novo hearing.[23]

{¶ 48} The judgment of the trial court is reversed. This matter is remanded to the trial court for an entirely new hearing on appellee's motion for permanent custody. Pursuant to R.C. 2151.414(A)(2), the trial court shall continue to expedite this matter.

Judgment reversed
and cause remanded.

O'TOOLE, J., concurs in judgment only.

GRENDELL, J., dissents.

DIANE V. GRENDELL, Judge, dissenting.

{¶ 49} The majority's decision is premised on three misconceptions: 1) the lower court misinterpreted this court's intention on remand from the prior appeal, 2) the lower court failed to correct the error by allowing hearsay to remain part of the record, and 3) the lower court unfairly denied appellants the opportunity to introduce evidence. I respectfully dissent.

{¶ 50} The subject of the present proceedings is a five-year-old girl, Hope Walker. Hope suffers from several chronic medical conditions, including hypothyroid and a drooping eyelid. Hope was taken into the protective custody of Ashtabula County Children Services Board ("Ashtabula Children Services") when she was 11 days old. The present case began three days later when Ashtabula Children Services filed a dependency complaint regarding Hope. Since that time, Hope has been in the custody of a foster family that desires to adopt her.

---

23. *In re Lucas,* supra.

{¶ 51} Hope's mother, Tanna Howser, was 15 when she bore Hope and has been diagnosed as moderately mentally retarded. Hope was conceived when Tanna's parents, Thomas and Gaylene Howser, gave Johnny Walker, a 27–year–old living in their house, permission to have sex with their 15–year–old daughter. In 2002, at the time of the first hearings on Ashtabula Children Services' motion for permanent custody, Tanna had been removed from her parents' custody and placed in the legal custody of Kim Johnson.

{¶ 52} At the time of these first hearings, Tanna was unable to properly parent Hope. By her own testimony, Tanna was still in school, did not work, did not drive, was unsure what she would do after graduation, and was unaware of any of Hope's special medical needs.[24]

{¶ 53} On appeal from the first judgment, this court reversed the lower court's judgment terminating Tanna's parental rights because the court had admitted hearsay statements that were contained in the report of Dr. Patricia Gillette. Dr. Gillette performed a parenting evaluation of Tanna at the request of Ashtabula Children Services.

{¶ 54} On remand, the trial court conducted a supplementary hearing to establish a foundation for the admission of Dr. Gillette's testimony. The court also heard testimony from Dr. Robert Kurtz, whose evaluation of Tanna Dr. Gillette consulted in forming her opinions.

{¶ 55} The majority states that the lower court erred by failing to hold new hearings on Ashtabula Children Services' motion for permanent custody, although this court's previous judgment entry did not indicate that new hearings should be held. For reasons explained more fully below, the lower court's actions on remand did not unfairly prejudice Gaylene's or Tanna's rights. Regardless of whether the lower court properly interpreted this court's intentions, today's decision penalizes the parties, particularly Hope.

{¶ 56} The majority also contends that a reversal is necessary because Dr. Gillette's written report remains part of the evidentiary record. Whether Dr. Gillette's report remains part of the record is irrelevant, provided that the lower court did not rely on that report in rendering its decision. The lower court heard extensive testimony from Dr. Gillette, and its conclusions are fully supported by Dr. Gillette's testimony. When a matter is tried before the court, there is a presumption that the trial judge "considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to

---

24. Hope could have been returned to Tanna's custody only with the assurance that Johnson would assume responsibility for parenting Hope. Johnson gave such assurance and sought custody of Hope herself. However, Hope had bonded with her foster family, while Johnson had seen Hope only on a single occasion, when Hope was one year old.

the contrary." *State v. White* (1968), 15 Ohio St.2d 146, 151, 44 O.O.2d 132, 239 N.E.2d 65; *Columbus v. Guthmann* (1963), 175 Ohio St. 282, 25 O.O.2d 115, 194 N.E.2d 143, paragraph three of the syllabus. The majority cites no specific instance where the magistrate's or trial court's findings relied on hearsay statements contained in the written report or otherwise inadmissible evidence.

{¶ 57} Nor does Dr. Gillette's reliance on Dr. Kurtz's testimony render Dr. Gillette's testimony inadmissible. According to the Rules of Evidence, Dr. Gillette is entitled to rely on "facts or data * * * admitted in evidence at the hearing." Evid.R. 703. Therefore, Dr. Kurtz's live testimony at the supplementary hearing cured the supposed lack of foundation in Dr. Gillette's testimony.

{¶ 58} Since the lower court's decision is supported by admissible evidence in the record, the presence of allegedly inadmissible evidence does not require reversal.

{¶ 59} Finally, the majority argues that the lower court permitted Ashtabula Children Services to introduce "new evidence * * * not offered at the initial hearing" but denied this right to Gaylene and Tanna. This is not accurate. At the June 2004 hearing, the lower court explained that it was hearing evidence that "should have been or could have been" admitted at the prior hearings. The court continued, "The remand was specifically to, for lack of a better term, repair the hearsay, at least that's how I interpreted the Eleventh District Court of Appeals." The opportunity to introduce evidence relative to Dr. Gillette's prior testimony was available to all parties. The court asked Gaylene's counsel whether he had "evidence that you should have presented at that [prior] permanent custody hearing" or whether he was "referring to evidence [since] the last permanent custody hearing." Gaylene's counsel replied that he had both, but did not proffer or describe the evidence to which he was referring. The court told counsel, "[u]nless you can show me some evidence that you should have presented back at the last evidentiary [hearing], I'm not doing new evidence," i.e. evidence that came into existence after the 2002 hearings.

{¶ 60} Whether the trial court misinterpreted this court's intentions is unimportant because the court did not compromise Gaylene's or Tanna's rights on remand. All parties involved had the opportunity to present evidence that "should have been or could have been" admitted at the prior hearing. The testimony of Drs. Gillette and Kurtz did not introduce "new evidence" arising after the 2002 custody hearings. Neither Gaylene nor Tanna proffered such evidence, but rather sought to introduce evidence of developments occurring *after* the initial hearings.

{¶ 61} The majority declares that Gaylene's counsel's interpretation of this court's decision was the correct one and remands this cause for a de novo hearing on Ashtabula Children Services' motion for permanent custody. In effect, the

majority's decision nullifies the past five years of judicial time and resources spent on this case.

{¶ 62} The majority's decision also keeps Hope in the legal custody of the government agency in whose care she has remained since the 11th day of her life. The ultimate issue in the present case is not, as the majority presupposes, Tanna's ability to parent Hope, but rather Hope Walker's best interests. R.C. 2151.414(B)(1); *In re Cunningham* (1979), 59 Ohio St.2d 100, 106, 13 O.O.3d 78, 391 N.E.2d 1034, quoting *In re R.J.C.* (Fla.App.1974), 300 So.2d 54, 58 (" 'it is plain that the natural rights of a parent are not absolute, but are always subject to the ultimate welfare of the child' "); *Winfield v. Winfield,* 11th Dist. No. 2002–L–010, 2003-Ohio-6771, 2003 WL 22952773, at ¶ 21 ("the best interests and welfare of the child is a primary consideration in all children cases").[25] As the magistrate's October 2004 decision observes: "Hope needs a permanent, stable home. We are not here to determine what is in the best interest of Tanna Howser. We are here to determine the best interest of Hope Walker. Hope does not need a legal custodian. She needs a parent or parents to care for her as their own." Because of the majority's decision today, which necessarily results in further hearings and appeals, it will be years before Hope has such parent or parents.

{¶ 63} For the foregoing reasons, I respectfully dissent.

---

**25.** The Ohio Supreme Court in *Cunningham* further explained: "[T]he *fundamental* or *primary* inquiry at the dispositional phase of these juvenile proceedings is not whether the parents of a previously adjudicated 'dependent' child are either fit or unfit. The mere fact that a natural parent is fit, though it is certainly one factor that may enter into judicial consideration, does not *automatically* entitle the natural parent to custody of his child since the best interests and welfare of that child are of paramount importance. *Willette v. Bannister* (Ala.Civ.App.1977), 351 So.2d 605, 607. Parental interests must be subordinated to the child's interest in determining an appropriate disposition of any petition to terminate parental rights. *In re Perkins* (Ind.App.1976) [170 Ind.App. 171], 352 N.E.2d 502, 509." 59 Ohio St.2d at 106, 13 O.O.3d 78, 391 N.E.2d 1034. (Emphasis sic.)