[Cite as *State v. Slaven*, 2013-Ohio-3352.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Patricia A. Delaney, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 12 CAA 08 0062 |
| ORAL D. SLAVEN | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:  Criminal appeal from the Delaware County
Court of Common Pleas, Case No. 09CR-I-
03-0163

JUDGMENT:  Affirmed

DATE OF JUDGMENT ENTRY:  July 30, 2013

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

CAROL HAMILTON O'BRIEN
DOUGLAS DUMOLT                        WILLIAM CRAMER
140 North Sandusky Street, 3rd Floor   470 Olde Worthington Road, Ste. 200
Delaware, OH 43015                     Westerville, OH 43082

*Gwin, P.J.*

**{¶1}** Defendant-appellant Oral D. Slaven ("Slaven") appeals from the July 31, 2012 Judgment Entry of the Delaware County Court of Common Pleas convicting and sentencing him after a jury trial on six counts of rape with a child under the age of thirteen and three counts of gross sexual imposition with a child under the age of thirteen.

*Facts and Procedural History*

**{¶2}** In 2008, Slaven was charged with six counts of rape of a child under the age of thirteen in violation of R.C. 2907.02(A)(1)(b), and three counts of gross sexual imposition with a child under the age of thirteen in violation of R.C. 2907.05(A)(4). All nine of these counts related to Slaven's stepdaughter K.S. There was also a tenth count of rape of a child under ten in violation of R.C. 2907.02(A)(1)(b), which related to Slaven's son D.S.

**{¶3}** In August 2009, all ten charges were tried together before a jury. At that trial, both children testified about sexual abuse that allegedly occurred from 2005 to 2008. Additionally, a third witness testified over defense objection about an incident in 1996 when Slaven attempted to engage in sexual conduct with her. This witness was a neighbor of Slaven's and was almost thirteen years old at the time of the incident. After a multi-day trial, the first jury found Slaven guilty as charged. Slaven was sentenced to an aggregate term of 85 years to life and required to register as a Tier III sex offender.

**{¶4}** Slaven filed a direct appeal raising several assignments of error. This court reversed and remanded for a new trial, finding that the trial court committed prejudicial error by permitting the same jury to hear evidence about both children and

the allegation from his former neighbor. *See, State v. Slaven*, 191 Ohio App.3d 340, 2010-Ohio-6400, 945 N.E.2d 1142(5th Dist. 2010). ["Slaven I"].

{¶5}   On remand, a new judge was appointed and the tenth count relating to D.S. was severed. The charges relating to K.S. proceeded to a second jury trial in June 2012.

{¶6}   K.S. initially disclosed the abuse to a friend at school. Following a referral from the school's principal, Job and Family Services ("JFS") intervened. Patty Clements of JFS testified that as part of her investigation, she interviewed K.S. at school and that K.S. had disclosed that Slaven had raped and fondled her.

{¶7}   K.S. testified at trial that Slaven had sexually abused her from the time she started fourth grade. K.S. related numerous incidents of Slaven's sexually penetrating and fondling her, including an incident during which D.S. walked into the room and witnessed the encounter.

{¶8}   Again, after a multi-day trial, the second jury found Slaven guilty as charged. Slaven was sentenced to an aggregate term of 58 years to life and again required to register as a Tier III sex offender. The prosecution subsequently dismissed the tenth count relating to D.S.

*Assignments of Error*

{¶9}   Slaven raises four assignments of error,

{¶10}  "I. APPELLANT WAS DEPRIVED OF HIS RIGHTS TO THE EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE STATE AND FEDERAL CONSTITUTIONS WHEN COUNSEL FAILED TO IMPEACH THE MEDICAL TESTIMONY REGARDING INJURIES TO COMPLAINANT'S HYMEN.

**{¶11}** "II. APPELLANT WAS DEPRIVED OF HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL UNDER THE STATE AND FEDERAL CONSTITUTIONS WHEN THE TRIAL COURT EXCLUDED THE TESTIMONY OF A DEFENSE EXPERT ON CHILD SEXUAL ABUSE.

**{¶12}** "III. APPELLANT'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL UNDER THE STATE AND FEDERAL CONSTITUTIONS WERE VIOLATED WHEN THE TRIAL COURT RESTRICTED THE USE OF EVIDENCE THAT THE COMPLAINANT HAD SEVERE PSYCHIATRIC PROBLEMS.

**{¶13}** "IV. APPELLANT WAS DEPRIVED OF HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL UNDER THE STATE AND FEDERAL CONSTITUTIONS BY THE CUMULATIVE EFFECT OF THE NUMEROUS ERRORS IN THIS CASE."

I.

**{¶14}** In his first assignment of error, Slaven argues that he was denied effective assistance of counsel. Specifically, Slaven contends defense counsel performed deficiently by failing to impeach Dr. Thackeray, who conducted the January 2008 examination of K.S., with medical testimony from the first trial.

**{¶15}** A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry in whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180(1993); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373(1989).

**{¶16}** In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. *Bradley*, 42 Ohio St.3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.

**{¶17}** In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. Prejudice warranting reversal must be such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. A court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would "reasonably likely been different" absent the errors. *Strickland*, 466 U. S. 695, 696. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, supra; *Bradley*, supra.

**{¶18}** Dr. Thackeray, who conducted the January 2008 examination, testified for the prosecution at both trials. Dr. Scribano, who performed the March 2008 examination, only testified during the first trial. Dr. Scribano was unavailable to testify at the second trial because he had moved out of state.

**{¶19}** During the first trial, Dr. Thackeray testified that the January 14, 2008 examination of K.S. was normal. (5T. Aug. 12, 2009 at 727). Dr. Thackeray further testified that there was no "notch" present in K.S. hymen, or anywhere else. (Id. at 727; 728). However, Dr. Thackeray was asked the significance of a notch in the hymen/vaginal area. He testified,

A notch, really it's of limited significance, and it really depends on the case, how much we can say about it. Notches can be small, they can be large, they can be new, they can be old. We see them in children with concerns of sexual abuse. We also see them in children with no concern of sexual abuse. Notches by itself really doesn't tell us anything, whether or not a child's been abused.

\* \* \*

It's worth investigating further, looking into it. It doesn't tell me by itself that there's been trauma or injury.

(5T. Aug. 12, 2009 at 730).

{¶20} During the first trial Dr. Scribano who performed the March 2008 exam of K.S. testifed. He testifed that the exam of K.S. was essentially normal. He further testified,

There was an area that was highlighted by a nurse, and it was an area called the, called a notch. And those are areas that are typically identified but there is an uncertainty with regard to notches, as to whether to put them in the category of being diagnostic of penetration or non-specific. And this was a notch that was non-specific. It just means depth of that notch, how deep this notch was.

Notches could be the result of penetrating trauma. We also know from the research looking at non-abused girls, that studies really scrutinize, they sort out to make sure they are not abused. We also see

notches in that population as well. So, it doesn't tell us that this girl has

been abused.

A deep notch, however, is a diagnosis, we don't see deep notches

in kids not abused. That was not the finding here.

(4T. Aug. 11, 2009 at 579).

**{¶21}** Dr. Scribano testified that he reviewed the documentation of Dr. Thackeray's January 2008 examination of K.S. When asked if the notch he observed during his March 2008 examination was present in the January 2008 examination, Dr. Scribano testified,

It was because of the notches, in the way they were set, I wouldn't

say that I could call it a notch at this point. And it's hard to say because of

the maturity of the child because of puberty. The hymen has these kinds

of, what's called fimbriated or fibriation margins. And it's sort of like a

flower, like petals, you got to realize that, and then follow that through with

a cotton tip applicator; that was the method Dr. Thackeray utilized. There

was nothing there that again is supportive of what I was seeing in March, I

guess, when she presented.

In terms of this area, there was a notch but could also be construed

as related to just a form of fibriation.

(4T. Aug. 11, 2009 at 581). The jury convicted Slaven of all counts at the conclusion of the first trial.

**{¶22}** During the second jury trial, Dr. Thackeray again testifed on behalf of the state. The following exchange occurred,

Q.     What are the potential sources of a notch on the hymen?

A.     So, again I mean some girls are just born with notching on the hymen, and that's just who they are. Some girls we see as a result of penetrative trauma is from tampon use, penetration in the course of any type of sexual activity.

(4T. June 7, 2012 at 485-486). Slaven's concern in this appeal is with Dr. Thackeray's testimony on cross-examination during the second trial,

Q.     Let's talk about the notch now. It is your conclusion that based upon the January observation and the records you reviewed of the March examination, that that is consistent with sexual abuse.

A.     Yes.

Q.     Do you feel it could be, also be inconsistent with sexual abuse?

A. Could it be inconsistent with sexual abuse? No.

Q. No. Is it your testimony then, then the only possible source of that injury would be some sort of sexual penetration?

A. Yes.

(4T. June 7, 2012 at 493). Dr. Thackeray modified this statement in later testimony,

Q. Because it was your testimony that it could have happened only from sexual abuse in this case?

A. Well, some type of penetrative injury; that could include a tampon, anything upon insertion.

(4T. June 7, 2012 at 495).

**{¶23}** Slaven argues that Dr. Thackeray's testimony from the second trial is opposed to his testimony at the first trial that "Notches by itself really doesn't tell us anything, whether or not a child's been abused." He contends that trial counsel was ineffective in not impeaching Dr. Thackeray with this inconsistency.

**{¶24}** Slaven further argues that trial counsel should have sought to admit the testimony of Dr. Scribano from his first jury trial that the notch was not deep enough to diagnose trauma directly to contradict Dr. Thackeray's testimony during the second trial that the notch could only have resulted from a penetration injury.

**{¶25}** Assuming arguendo that trial counsel's performance was deficient, Slaven cannot satisfy the second prong of *Strickland* and demonstrate that he was prejudiced by that deficiency.

**{¶26}** Slaven must show that but for counsel's errors, there is a reasonable probability that the proceeding's result would have been different. The alleged deficiencies in counsel's performance with respect to the notch on K.S.'s hymen were not dispositive. The first jury who convicted Slaven had the benefit of hearing both Dr. Scribano and Dr. Thackeray testify. They convicted Slaven of all counts related to K.S. During the first trial, both doctors testified that the notch present in the March examination could be the result of penetrating trauma and was consistent with K.S.'s disclosure of sexual abuse. Both doctors testified that notches in hymens can be naturally occurring and both doctors testified that simply because a notch is present, it does not mean a child has been abused. In the first trial, Dr. Thackeray was not asked about Dr. Scribano's March 2008 examination.

**{¶27}** In the second trial, Dr. Thackeray did testify, "some girls are just born with notching on the hymen." Dr. Thackeray did clarify that "some type of penetrative injury" other than sexual abuse could have caused the notch.

**{¶28}** Slaven has not argued in his appeal that his convictions are against the weight of the evidence or based upon insufficient evidence. The testimony of K.S. alone is sufficient to establish the elements needed to convict Slaven if believed by a jury. "Corroboration of victim testimony in rape cases is not required. See *State v. Sklenar* (1991), 71 Ohio App.3d 444, 447, 594 N.E.2d 88; *State v. Banks* (1991), 71 Ohio App.3d 214, 220, 593 N.E.2d 346; *State v. Lewis* (1990), 70 Ohio App.3d 624, 638, 591 N.E.2d 854; *State v. Gingell* (1982), 7 Ohio App.3d 364, 365, 7 OBR 464, 455 N.E.2d 1066." *State v. Johnson,* 112 Ohio St.3d 210, 217, 2006-Ohio-6404 at ¶53, 858 N.E.2d 1144, 1158.

**{¶29}** The claims raised by Slaven do not rise to the level of prejudicial error necessary to find that he was deprived of a fair trial. Having reviewed the record that Slaven cites in support of his claim that he was denied effective assistance of counsel, we find Slaven was not prejudiced by defense counsel's representation of him. The result of the trial was not unreliable nor were the proceedings fundamentally unfair because of the performance of defense counsel. Slaven has failed to demonstrate that there exists a reasonable probability that, had trial counsel impeached Dr. Thackeray as he has suggested the result of the trial would have changed. As we have noted, any error in the procedure employed by trail counsel was harmless beyond a reasonable doubt.

{¶30} Because we have found only harmless error in this case, we find Slaven has not demonstrated that he was prejudiced by trial counsel's performance.

{¶31} Slaven's first assignment of error is overruled.

II.

{¶32} In his second assignment of error, Slaven claims he was deprived due process and a fair trial under the state and federal constitutions when the trial court excluded the testimony of his expert witness Jeffery Smalldon, PhD.

{¶33} On May 17, 2011, Slaven filed a motion to appropriate funds to employ a "consulting defense psychologist" to assist his counsel in preparation for trial. As there were substantial psychiatric records in discovery relevant to the case, the state did not oppose that motion and the trial court approved $5,850.00 in funds for a "consulting expert."

{¶34} On May 8, 2012, Slaven filed a motion requesting additional funds due in part to Smalldon's anticipated testimony at Slaven's upcoming jury trial. After an unrecorded telephone conference with the parties, the trial court denied the motion by Judgment Entry filed May 29, 2012.

{¶35} Following the denial of the motion, Smalldon provided the defense with a second report dated May 30, 2012. On May 30, 2012, the state filed a motion in limine to exclude reference to Smalldon's testimony.[1] At the start of trial, the court granted the prosecution's motion in limine and excluded reference to Smalldon's testimony.

{¶36} During Slaven's second jury trial at the conclusion of Dr. Thackeray's testimony, Slaven renewed his request to have Smalldon testify. Slaven indicated that he anticipated Smalldon to offer criticism of the forensic interview performed by Patricia

---

[1] This motion was based upon Smalldon's original report dated August 4, 2011.

Clements, the significance of delayed disclosure in child sexual abuse cases, and the family child sexual abuse accommodation syndrome. (4T. June 5, 2012 at 499). The trial court explained that Smalldon's report merely posed a series of questions and offered general discussion of factors that could, in some circumstances, be significant. After an extended colloquy on the record, the trial court indicated that it was "disinclined to permit" the type of general discussion contained in Smalldon's report. (Id. at 499-507). After this discussion concluded, Slaven proffered Smalldon's August 4, 2011 letter with Smalldon's curriculum vitae and the May 30, 2012 supplemental letter.

{¶37} An appellate court should apply an abuse of discretion standard in reviewing a court's decision to admit or exclude expert testimony. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 144-146, 118 S.Ct. 512, 139 L.Ed.2d 508(1997); *State v. Williams*, 4 Ohio St.3d 53, 58, 446 N.E.2d 444(1983). "To the extent that doing so is necessary to avoid making an unreasonable, arbitrary, or unconscionable decision, a trial court is obliged to apprise itself of the details of proffered evidence." *Valentine v. Conrad*, 110 Ohio St.3d 42, 2006-Ohio-3561, 850 N.E.2d 683 at ¶ 20. *Accord, State v. Bruce*, 5th Dist. No, 2006-CA-45, 2008-Ohio-5709, ¶37. An abuse of discretion "suggests unreasonableness, arbitrariness, or unconscionability. Without those elements, it is not the role of this court to substitute its judgment for that of the trial court." Id. *See also State v. Adams*, 62 Ohio St.2d at 157, 404 N.E.2d 144.

{¶38} Courts should favor the admissibility of expert testimony whenever it is relevant and the criteria of Evid.R. 702 are met. *State v. Nemeth*, 82 Ohio St.3d 202, 207, 694 N.E.2d 1332(1998), citing *State v. Williams*, 4 Ohio St.3d 53, 446 N.E.2d

444(1983), syllabus. Evid.R. 702 provides that a witness may testify as an expert if all of the following apply:

(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C) The witness' testimony is based on reliable scientific, technical, or other specialized information.

Additionally, Evid. R.703 provides as follows:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing.

**{¶39}** The standard for the admissibility for scientific evidence in Ohio as found in *State v. Williams*, 4 Ohio St.3d 53, 446 N.E.2d 444(1983), is whether the questioned evidence is relevant and will assist the trier of fact in understanding evidence presented or in determining a fact in issue. *State v. Pierce*, 64 Ohio St.3d 490, 497, 597 N.E.2d 107(1992). However, when such knowledge is within the experience, knowledge or comprehension of the jury or trier-of-fact, expert testimony is inadmissible. See *Bostic v. Connor*, 37 Ohio St.3d 144, 524 N.E.2d 881(1988), paragraph three of the syllabus; *State v. Koss*, 49 Ohio St.3d 213, 216, 551 N.E.2d 970(1990).

In excluding the testimony of Dr. Smalldon, the trial court reasoned,

I have tried, in consideration of relating Dr. Smalldon to research or the opinions that the witness would express, to the extent that his expressing opinions about generalities, they are not remarkably different from the opinions that have been expressed by other witnesses during the testimony, in which you were free to develop, and indeed were developed on direct examination of the same witnesses, that they are dealing with circumstances which can have multiple meanings, can have multiple considerations and multiple significance, not necessarily limited to sexual abuse.

I think that's been clear from virtually every witness who testified, in large part that is what Mr. Smalldon is saying as well. If he were prepared to say that in his opinion the information that he studied from the history of that case causes him to conclude that there was no sexual abuse that would be much greater significance.

* * *

To the extent that he is prepared to say a specific examination or interview not could have, but did adversely affect the report of the alleged victim, that might have some value, but he doesn't say that in his report. He simply raises questions about whether things would be important.

With all due respect, I am disinclined to permit that type of general discussion which is not sufficiently focused.

* * *

(4T. June 5, 2012 at 504-505).

**{¶40}** Our review of the proffered reports leads us to the same conclusion. In the initial motion filed May 17, 2012, Slaven requested funds to retain Dr. Smalldon,

> To review and potentially rebut the State's evidence in this case. Dr. Smalldon will review the record and evidence from Mr. Slaven's first trial, and provide his expert opinion to defense counsel regarding the reliability of the State's evidence, as well as his opinion regarding evidence to rebut the State's expert testimony.

**{¶41}** Thus, this is not a case where a defendant was denied all access to expert assistance. The trial court granted Slaven access to the expert opinions of Dr. Smalldon to assist in the preparation of his defense.

**{¶42}** With respect to the "indicators of abuse" opinion expressed by Smalldon in his letters, the trial court accurately observed that virtually every witness who had up to that point testified had already testified to what Smalldon would be prepared to say (i.e. non-specific indicators of abuse can have many causes and do not necessarily mean abuse has occurred). Every witness who testified regarding "indicators of abuse" testified on both direct examination, and cross examination, that the indicators could be caused by many things other than sexual abuse and did not alone mean that K.S. was sexually abused.

**{¶43}** Under the "Contextual Issues" heading, Smalldon poses a series of questions, but offers no opinions. At no point does he indicate investigators, medical professionals, or anyone else failed to consider these "Contextual Issues."

**{¶44}** Similarly, under headings three, four, five, and six, Smalldon does not offer an opinion that the case was improperly investigated, "confirmatory bias" was present,

K.S. was somehow tainted by a suggestive interviewer, or K.S.'s disclosure of sexual abuse were inconsistent.

**{¶45}** With the information that Slaven presented to the trial court at the time of his requests, we find that the trial court's decision to exclude Smalldon's testimony was not unreasonable, arbitrary or unconscionable.

**{¶46}** Further, we note Slaven is unable to demonstrate that exclusion of Smalldon's testimony rose to the level of constitutional error. In our view, the examination and cross-examination of the state's witnesses at trial in the case at bar afforded the jury an adequate opportunity to assess the reliability of K.S.s' allegations against Slaven. The record reflects that the examination of the state's witnesses at trial was thorough, including questions regarding the non-specific indicators of abuse, the coercive questioning of the initial interview, the condition of her home and family relationships. K.S. testified at the second trial and was subject to cross-examination. In spite of this, the jurors concluded that K.S. properly disclosed the sexual abuse by Slaven. While the expert's testimony may well have given the jurors another perspective from which to assess the testimony of K.S., we do not believe that this perspective was constitutionally required.

**{¶47}** We find after a thorough review of the entire record that any error in not permitting Smalldon to testify was harmless beyond a reasonable doubt.

**{¶48}** Slaven's second assignment of error is overruled.

III.

**{¶49}** In his third assignment of error, Slaven contends that the trial court violated his rights to due process and a fair trial by restricting the use of extrinsic evidence that K.S. had received treatment for psychiatric problems.

**{¶50}** "It is axiomatic that a determination as to the admissibility of evidence is a matter within the sound discretion of the trial court. See *Calderon v. Sharkey* (1982), 70 Ohio St.2d 218, 24 O.O.3d 322, 436 N.E.2d 1008. The issue of whether testimony is relevant or irrelevant, confusing or misleading is best decided by the trial judge who is in a significantly better position to analyze the impact of the evidence on the jury." *State v. Taylor*, 39 Ohio St.3d 162, 164, 529 N.E.2d 1382(1988).

**{¶51}** Evid.R. 103(A) requires any claim of error relating to the exclusion of evidence to (1) affect a substantial right of the party and (2) the substance of the excluded evidence must be made known to the court by proffer or should be apparent from the context within which questions were asked.

**{¶52}** "The purpose of a proffer is to assist the reviewing court in determining, pursuant to Evid.R. 103, whether the trial court's exclusion of evidence affected a substantial right of the appellant." *In re Walker*, 162 Ohio App.3d 303, 2005-Ohio-3773, 833 N.E.2d 362(11th Dist.), ¶ 37; *State v. Mullins*, 2nd Dist. No. 21277, 2007-Ohio-1051, ¶ 36.

**{¶53}** During the testimony of K.S. a recess was taken to address issues relating to the cross-examination of K.S. outside the presence of the jury. The following exchange took place,

THE COURT: The record may show that the Court has reviewed the documents which purport to be an inpatient hospitalization of [K.S.] from April 15, 2005 to April 21, 2005.

I am now asking defense counsel, what is it you propose to do?

[DEFENSE COUNSEL]: Your Honor, I would like to have the treating attending physicians come in and testify as to the issues with feelings of unhappiness, resentment of her being uncontented, or if she felt her parents were happy since she's no longer there. That she was hearing voices that were commanding her to burn the house down and kill people, etc.

*** 

[THE COURT]: [Defense Counsel], are you proposing to have this document admitted into evidence?

[DEFENSE COUNSEL]: That is not my intent, it would be to have testimony—

[THE COURT]: The document, among other things recites that your client was released from prison, and that the patient is not permitted to be alone with him, which I would think would not be favorable to the defense.

* * *

[THE COURT]: There is nothing in this document or in the anticipated testimony of the proposed witnesses that would either support

or deny that the alleged offenses occurred, I don't think you make any claim of that nature.

[DEFENSE COUNSEL]:    That's correct, you honor. It's solely for credibility.

(3T. June 5-6-7, 2012 at 437-438; 439-440; 441-442). During this exchange, the state informed the trial court that the records also established that,

The discharge notes here happen to show that there was no ongoing hallucinations, no homicidal idealization, nothing, in being discharged from the hospital.

* * *

The other issue, one of the causes listed throughout here is the stepfather is a sexual offender, he's been in prison, and he returned from prison and it's listed throughout the report as the stepfather being that same stressor contributing to her conditions leading up the her hallucinations.

(3T. June 5-6-7, 2012 at 438; 439). At the conclusion of the discussions the trial court ruled,

[THE COURT]:    To the limited extent they have to do with credibility, I'm going to permit a very limited use of the subject. I will permit in cross-examination of the witness to ask if she had a hospitalization for whatever it is, in April, preceding the alleged offenses, and to ask her questions about that. I am not going to permit you to have the subject

expanded, on with other witness, to discuss that history or in the records, which you are not offering anyway.

* * *

[THE COURT]:      You can ask the question about her mental condition at the time of the offenses or close to that time, and we'll see what answer she may have.

* * *

[THE COURT]:      I can't rule that out. That certainly indeed will not surprise me if the state argues whatever her mental condition was, resulted from a violation by the defendant. That's the risk he'll have to take. All right?

(3T. June 5-6-7, 2012 at 441-442).

**{¶54}** Slaven did not ask the court to admit the records into evidence; neither did he ask that he be permitted to proffer the records for purposes of appeal. Under the doctrine of "invited error," it is well settled that "a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." *State ex rel. Smith v. O'Connor*, 71 Ohio St.3d 660, 663, 1995-Ohio-40, 646 N.E.2d 1115(1995) *citing State ex rel. Fowler v. Smith*, 68 Ohio St.3d 357, 359,1994-Ohio-302, 626 N.E.2d 950(1994). *See, also, Lester v. Leuck*, 142 Ohio St. 91, 50 N.E.2d 145(1943) paragraph one of the syllabus. As the Ohio Supreme Court has stated,

[t]he law imposes upon every litigant the duty of vigilance in the trial of a case, and even where the trial court commits an error to his prejudice, he is required then and there to challenge the attention of the court to that

error, by excepting thereto, and upon failure of the court to correct the same to cause his exceptions to be noted. It follows, therefore, that, for much graver reasons, a litigant cannot be permitted, either intentionally or unintentionally, to induce or mislead a court into the commission of an error and then procure a reversal of the judgment for an error for which he was actively responsible.

*Lester* at 92-93, quoting *State v. Kollar*, 93 Ohio St. 89, 91, 112 N.E. 196(1915).

**{¶55}** Slaven never requested permission to cross-examine the victim with the medical records. On cross-examination, defense counsel asked K.S. if she remembered going to a hospital and she said yes. Defense counsel asked if that was the Ohio Hospital for Psychiatry and K.S. said she did not remember. Finally, defense counsel asked K.S. if she was hearing voices when she went to the hospital. K.S. responded: "No." There was no further questioning in regard to K.S.'s psychiatric history.

**{¶56}** Accordingly, to the extent that he now argues the trial court erred by refusing to permit him to utilize the records as extrinsic evidence to impeach K.S., Slaven's argument is misplaced. Moreover, Slaven never attempted to call the attending or treating physicians as witnesses in his case in chief or to proffer their testimony.

**{¶57}** Without the medical records in question admitted or proffered into the record, Slaven cannot demonstrate any error or irregularity in connection with the trial court's decision. *Knapp v. Edwards Laboratories*, 61 Ohio St. 2d 197, 199, 400 N.E.2d 384(1980). A presumption of regularity applies to the trial court's ruling and Slaven has shown us nothing to overcome the presumption.

**{¶58}** Slaven's third assignment of error is overruled.

IV.

{¶59} In his fourth assignment of error, Slaven asserts that the cumulative effect of the errors alleged in his previous assignments of error warrant a reversal. We disagree.

{¶60} Pursuant to the doctrine of cumulative error, a judgment may be reversed where the cumulative effect of errors deprives a defendant of his constitutional rights, even though the errors individually do not rise to the level of prejudicial error. *State v. Garner* 74 Ohio St.3d 49, 64, 656 N.E.2d 623(1995), *certiorari denied*, 517 U.S. 1147, 116 S.Ct. 1444, 134 L.Ed.2d 564(1996). *Accord, State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506.

{¶61} This Court has found that if the trial court did not err, cumulative error is simply inapplicable. *State v. Carter*, 5th Dist. No. 2002CA00125, 2003-Ohio-1313 at ¶37. To the extent that we have found that any claimed error of the trial court was harmless, or that claimed error did not rise to the level of plain error, we conclude that the cumulative effect of such claimed errors is also harmless because taken together, they did not materially affect the verdict. *State v. Leonard*, 104 Ohio St.3d 54, 89-90, 2004-Ohio-6235, 818 N.E.2d 229, 270 at ¶185.

**{¶62}** As this case does not involve multiple instances of error, Slaven's fourth assignment of error is overruled.

**{¶63}** The judgment of the Court of Common Pleas, Delaware County, Ohio, is affirmed.

By Gwin, P.J.,

Delaney, J., and

Baldwin, J., concur

_____
HON. W. SCOTT GWIN


_____
HON. PATRICIA A. DELANEY


_____
HON. CRAIG R. BALDWIN


WSG:clw 0710

[Cite as *State v. Slaven*, 2013-Ohio-3352.]

IN THE COURT OF APPEALS FOR DELAWARE COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| ORAL D. SLAVEN | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 12 CAA 08 0062 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Delaware County, Ohio, is affirmed. Costs to appellant.

_____
HON. W. SCOTT GWIN


_____
HON. PATRICIA A. DELANEY


_____
HON. CRAIG R. BALDWIN